UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |
|---|---|
| DENNIS ROSSITER ) | |
|     Plaintiff ) | |
| ) | |
| v. ) | C.A. No. 04 CR 10069DPW |
| ) | |
| INTERNATIONAL BUSINESS ) | |
| MACHINES CORPORATION ) | |
|     Defendant ) | |

### DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL

I. **INTRODUCTION**

Defendant International Business Machines Corporation ("IBM") hereby submits this memorandum in support of its motion to compel plaintiff to 1) produce documents concerning a prior age discrimination case he brought against a previous employer, Digital Equipment Corporation ("DEC"); and 2) authorize the release of his medical records from the Dartmouth Hitchcock Clinic in Keene, New Hampshire. As grounds for this motion, IBM states that:

    a)    The records regarding plaintiff's prior case against DEC are, inter alia, relevant to plaintiff's damages claim; the records are within his control; and plaintiff did not object to the document request seeking their production. Yet plaintiff has unaccountably failed and refused to produce the documents.

    b)    The plaintiff's medical records are relevant to plaintiff's damages claim; he did not object to the document request seeking their production (nor to interrogatories seeking medical history information); and he did not move for a protective order with respect to the subpoena to Dartmouth Hitchcock Clinic. Yet plaintiff has instructed the Clinic to withhold production, and the Clinic has refused to release the documents due to plaintiff's instruction.

II. <u>FACTUAL BACKGROUND</u>

    a) <u>The Nature of Plaintiff's Complaint</u>

Plaintiff Dennis Rossiter has brought claims against his former employer, IBM, for age discrimination in violation of the ADEA and M.G.L. c. 151B. In particular, plaintiff claims that he was discriminated against due to his age by virtue of:

1. Having been demoted in April 1997;

2. By not receiving certain promotions or positions that were allegedly given to younger, less qualified employees;

3. By being laid-off as part of a large scale lay-off in January 2002.

See Complaint and Plaintiff's Answers to Interrogatories, Answer No. 10, attached hereto as Exhibits 1 and 2 respectively.

    b) <u>Plaintiff's Alleged Physical and Emotional Injuries</u>

In addition to his alleged economic damages, plaintiff claims damages for alleged physical and emotional injuries. See Plaintff's Answer to Interrgatroy No. 10, Exhibit 2 hereto. With respect to his 1997 demotion (and alleged subsequent failure to obtain promotions and other positions) he describes his physical and emotional damages as follows:

> "...Plaintiff felt depressed, angry, and deeply frustrated. He was embarrassed and demeaned by these intentional actions, and he felt that his IBM manager was doing everything short of involuntary termination to force plaintiff out of the company...Plaintiff suffered from sleeplessness, diminished ability to concentrate, stress-related flare-ups of a chronic dermatological condition, and tension in his relationship with his wife."

Id.

With respect to his January 2002 lay-off, plaintiff alleges as follows:

> "...Plaintiff has suffered, continues to suffer, and will suffer in the future emotional distress as a result of IBM's constructive and actual termination

of his career. Plaintiff's physical and emotional pain has taken various forms and has caused multiple symptoms. Plaintiff withdrew from his family and friends and suffered from stress-related flair ups of a chronic dermatological condition. Plaintiff took medication to treat the condition, but his deep sadness, frustration, and feeling that he had let his wife down did not abate. Plaintiff felt worthless after many years of successful advancement in high technology. He gained weight. Plaintiff's intimate relations with his wife ceased. Plaintiff would wake up in the middle of the night going over in his mind how IBM had promoted younger, less experienced employees, tried to force plaintiff to leave, and when that did not work, terminated his employment. Plaintiff could not even enjoy simple pleasures, such as reading a book, because he could not concentrate for any period of time without lapsing into a rehashing of IBM's discriminatory conduct towards him."

Id.

At his deposition, plaintiff also testified that he saw a doctor a few times about stress from these work-related events and that the doctor prescribed a sedative for his stress. See Affidavit of Daniel S. Tarlow at paragraph 10, attached hereto as Exhibit 3.

c)   Plaintiff's Prior Case Against DEC

In 1994, plaintiff brought an age discrimination case at the MCAD against his prior employer, DEC. According to the MCAD's records, plaintiff's case against DEC was closed through a successful conciliation in December 1999. Affidavit of Daniel S. Tarlow at paragraph 7. At his deposition in this matter on December 22, 2004, plaintiff was only able to recall that he filed a claim against DEC for age discrimination. Id. at paragrpah 11. Beyond that, he could not remember the nature of his allegations (e.g., what job actions in particular he had alleged were discriminatory at DEC) nor the nature of the damages he claimed (or even if had claimed emotional distress damages) or for what period. Id.

d)   IBM's Written Discovery Requests and Plaintiff's Responses

IBM's discovery requests and plaintiff's responses relevant to these discovery

disputes are as follows:

1. <u>Document request regarding the plaintiff's claims against DEC</u>:

    <u>Document Request No. 11</u>: Any and all documents concerning any claim or charge of discrimination or retaliation that you made against IBM or any other person or entity, including but not limited to charges made with the Massachusetts Commission Against Discrimination, Equal Employment Opportunity Commission, or any other federal, state or local court, agency or entity.

    <u>Plaintiff's Response to Document Request No. 11</u>: Plaintiff will produce documents responsive to the request. Plaintiff also refers IBM to <u>MCAD</u> C.A. No. 95-SEM-0909 (age claim settled and voluntarily withdrawn)[1] and Middlesex Superior Court C.A. No. 2003-03174 (insurance claim for personal injury).

    See plaintiff's response to document requests attached hereto as Exhibit 4.

    ***

    In fact, plaintiff has produced no documents responsive to this request.

2. <u>Interrogatories and document requests concerning medical information</u>:

    <u>Interrogatory No. 8</u>: Identify all health care providers, including mental health care providers, you have consulted from November 1, 1992 through the present and for each health care provider, state the reason you sought treatment, the nature of treatment you received, the dates you received treatment, and whether you are claiming that you received this treatment as a consequence of IBM's alleged unlawful conduct.

    <u>Answer to Interrogatory No. 8</u>: Plaintiff suffers from a chronic dermatological condition commonly called eczema, which can be exacerbated by stress. Plaintiff had flare-ups of this condition subsequent to his demotion and subsequent to his termination. His treating physician is Dr. Richard Seymour at the Cheshire Medical Center/Dartmouth-Hitchcock, at 580 Court Street, Keene, New Hampshire 03431. Following Plaintiff's termination, he saw Dr. Seymour on April 22, 2002; December 17, 2002; April 23, 2003; July 28, 2003; July 29, 2003; September 18, 2003; October 9, 2003; and March 24, 2004, respectively.

---

[1] This is the plaintiff's case against DEC. See Affidavit of Daniel S. Tarlow at paragraph 7.

<u>Interrogatory No. 9</u>: Identify all prescription medications you have taken since November 1, 1992, including in your answer the duration and frequency of your use of the medication and the name of the physician who prescribed the medication.

<u>Answer to Interrogatory No. 9</u>: Plaintiff's primary care physician, Dr. Frederick Bruch of the Cheshire Medical Center, prescribed valium for Plaintiff on March 6, 2002.

<u>Document Request 13</u>: Any and all documents concerning visits or consultations you have had with any physicians or health care professionals (including mental health professionals) as referred to in Interrogatory No. 8, including but not limited to medical records, doctor's notes, test results or medical reports.

<u>Response to Document Request 13</u>: Plaintiff will produce document (sic) responsive to the request.

<u>Document Request 14</u>: Any and all documents concerning expenses you have paid with regard to visits or consultations with any physicians or health care professionals (including mental health professionals) as referred to in Interrogatory No. 8 including, without limitation, all receipts and invoices.

<u>Response to Document Request 14</u>: Most of Plaintiff's medical expenses were covered by insurance, and uncovered expenses would approximate $2000. Plaintiff refers IBM to his response to Document Request No. 13, supra, and produced documents.

See Exhibits 2 and 4 hereto.

***

In fact, the <u>only</u> medical record plaintiff actually produced is a one page report from a dermatologist. See Affidavit of Daniel S. Tarlow at paragraph 9.

e) <u>Plaintiff Agrees to Produce Documents Regarding his Case Against DEC at his Deposition, but Produces No Documents</u>

During plaintiff's deposition, IBM's counsel followed up on IBM's document requests by specifically asking plaintiff and his counsel to produce documents regarding plaintiff's case against DEC. See Affidavit of Daniel S. Tarlow at paragraph 11, Exhibit

5

3 hereto. Plaintiff's counsel conceded the relevance of the documents, and agreed to produce the documents if plaintiff could find them. Id.

Subsequently, plaintiff's counsel wrote to IBM's counsel stating that plaintiff was unable to locate the documents concerning his suit against DEC. Id. at paragraph 3. IBM's counsel responded by reminding plaintiff's counsel that the obligation under the rules of civil procedure is for a party to produce documents in his possession, custody or control, and this instance, that encompassed plaintiff obtaining documents about the DEC case from the lawyer who represented him in that case. In particular, IBM's counsel wrote as follows to plaintiff's counsel:

> "As you know, Fed. R. Civ. P. 34 requires a party to produce documents in his possession, custody or control. Mr. Rossiter was represented by counsel in his age discrimination case against DEC. Clearly, Mr. Rossiter, the client, has the right to obtain the file or a copy of the file from the lawyer/firm that represented him in that matter. It appears he was represented by John McKelway at Gadsby & Hannah. Please have your client obtain a copy of his file from Gadsby and please produce the file to us as soon as possible." Id.

IBM's counsel has not received any further communication from plaintiff's counsel about this discovery dispute. Id. at paragraph 15.

f) <u>Subpoena of Dartmouth-Hitchcock Clinic</u>

Due to the fact that the only medical record that plaintiff produced was a one page dermatological report, on December 23, 2004, IBM's counsel issued a subpoena to the Dartmouth-Hancock Clinic because plaintiff had indicated that was the medical facility where he had consulted doctors about the physical and emotional effects of the alleged discrimination by IBM. Id. at paragraph 12. In particular, the subpoena sought:

> All documents concerning Dennis Rossiter, DOB 1/16/42, including but not limited to all reports, diagnoses, prognoses, medical histories, x-rays, photographs, charts, clinical notes, memoranda, statements,

correspondence, communications, test results, clinical and insurance records, prescriptions and bills (whether payable by Dennis Rossiter or any third parties) relating to any physical health or mental health concerns, conditions, illnesses or disabilities he had or may have had at any time. Correspondence and communications include, but are not limited to, emails and letters, as well as notes of conversations and telephone calls. Without limiting the foregoing, please produce all records of Dr. Richard Seymour and Dr. Frederick Bruch concerning Dennis Rossiter.

Plaintiff did not seek a protective order with respect to the subpoena to Dartmouth-Hitchcock Clinic. Id. However, the Clinic sought his approval before releasing medical records and he instructed the clinic not to release any of his records. Id. at paragraph 14.[2] The Clinic is unwilling to release plaintiff's medical records without his instruction to do so. Id. at paragraph 2.

III. <u>ARGUMENT</u>

   1) <u>Plaintiff Should be Compelled to Produce the Documents Concerning His Claim Against DEC</u>

IBM's discovery requests and plaintiff's responses relevant to this dispute are as follows:

<u>Document Request No. 11</u>: Any and all documents concerning any claim or charge of discrimination or retaliation that you made against IBM or any other person or entity, including but not limited to charges made with the Massachusetts Commission Against Discrimination, Equal Employment Opportunity Commission, or any other federal, state or local court, agency or entity.

<u>Plaintiff's Response to Document Request No. 11</u>: Plaintiff will produce documents responsive to the request. Plaintiff also refers IBM to MCAD C.A. No. 95-SEM-0909 (age claim settled and voluntarily withdrawn) and Middlesex Superior Court C.A. No. 2003-03174 (insurance claim for personal injury).

See Exhibit 4 hereto.

---

[2] The Clinic indicated that it sought plaintiff's approval because the subpoena misnamed the Clinic by calling it the "Dartmouth-Hitchcock Hospital." Id. at paragraphs 13-14.

<u>Statement of IBM's Position as to Why Plaintiff Should be Compelled to Produce Documents Concerning his Claim Against DEC:</u>

First, the documents are relevant and discoverable. As shown above, plaintiff, in this action, is claiming he suffered physical and emotion injuries as far back as 1997 that he says resulted from IBM's alleged discrimination. Yet at the same time, plaintiff was pursuing an age discrimination claim against DEC. At his deposition, plaintiff could not recall what damages he claimed in the case against DEC or even if he claimed emotional distress damages. If indeed plaintiff did claim emotional distress damages against DEC for some of the same period for which he claims such damages against IBM, it would tend to show that there was a source of distress in his life other than IBM's alleged conduct. This would clearly be relevant to IBM's defense of plaintiff's damages case. Moreover, the records from the DEC case might show that plaintiff has taken inconsistent positions in the two cases about the source of his alleged injuries. Again this would clearly be relevant to IBM's defense of the instant claims.

Second, plaintiff, by not objecting to the above document request, has waived any objections he might have had to the production of these documents. See Local Rule 34.1 (C) (1).

Finally, plaintiff seems to believe that because he no longer has the documents in his immediate possession, that ends the matter. However, a party's obligation under Rule 34 is to produce documents in his or its possession, custody or control. "Control has been defined as 'the legal right to obtain the documents requested upon demand.'" See 7 Wm. Moore, et. al., Moore's Federal Practice 3rd, sec 34.14[2][b], at 34-64 (3rd ed. 2004). Plaintiff had a lawyer in his case against DEC, and clearly has the right to obtain his file

8

or a copy of his file from that lawyer.[3] Id. at 34-69, 34-70. (better reasoned view is that documents in possession of party's attorney are within the control of the party).

In sum, plaintiff should be ordered to obtain the file from the lawyer who represented him in the case against DEC and to produce the file to IBM forthwith.

> 2) **Plaintiff Should be Ordered to Instruct Dartmouth-Hitchcock to Release of his Medical Records.**

IBM's discovery requests and plaintiff's responses relevant to this dispute are as follows:

> Interrogatory No. 8: Identify all health care providers, including mental health care providers, you have consulted from November 1, 1992 through the present and for each health care provider, state the reason you sought treatment, the nature of treatment you received, the dates you received treatment, and whether you are claiming that you received this treatment as a consequence of IBM's alleged unlawful conduct.
>
> Answer to Interrogatory No. 8: Plaintiff suffers from a chronic dermatological condition commonly called eczema, which can be exacerbated by stress. Plaintiff had flare-ups of this condition subsequent to his demotion and subsequent to his termination. His treating physician is Dr. Richard Seymour at the Cheshire Medical Center/Dartmouth-Hitchcock, at 580 Court Street, Keene, New Hampshire 03431. Following plaintiff's termination, he saw Dr. Seymour on April 22, 2002; December 17, 2002; April 23, 2003; July 28, 2003; July 29, 2003; September 18, 2003; October 9, 2003; and March 24, 2004, respectively.
>
> Interrogatory No. 9: Identify all prescription medications you have taken since November 1, 1992, including in your answer the duration and frequency of your use of the medication and the name of the physician who prescribed the medication.
>
> Answer to Interrogatory No. 9: Plaintiff's primary care physician, Dr. Frederick Bruch of the Cheshire Medical Center, prescribed valium for Plaintiff on March 6, 2002.

---

[3] IBM's counsel's law firm (then Peckham, Lobel, Casey, Prince & Tye) initially represented DEC in the case brought by plaintiff, but the lawyer (David Casey) handling the matter moved to then Bingham Dana in 1999 and took the case and the files with him.

Document Request 13: Any and all documents concerning visits or consultations you have had with any physicians or health care professionals (including mental health professionals) as referred to in Interrogatory No. 8, including but not limited to medical records, doctor's notes, test results or medical reports.

Response to Document Request 13: Plaintiff will produce document (sic) responsive to the request.

Document Request 14: Any and all documents concerning expenses you have paid with regard to visits or consultations with any physicians or health care professionals (including mental health professionals) as referred to in Interrogatory No. 8 including, without limitation, all receipts and invoices.

Response to Document Request 14: Most of Plaintiff's medical expenses were covered by insurance, and uncovered expenses would approximate $2000. Plaintiff refers IBM to his response to Document Request No. 13, supra, and produced documents.

See Exhibits 2 and 4 hereto.

The Subpoena to Dartmouth-Hitchcock Clinic:

In addition to the above discovery requests, IBM's counsel issued a subpoena to the medical facility in New Hampshire, Dartmouth-Hitchcock Clinic, where plaintiff indicated he sought medical care as a result of the alleged physical and emotional injuries caused by IBM. Because the subpoena misnamed the Clinic as the "Dartmouth-Hitchcock Hospital", the Clinic apparently sought plaintiff's approval before releasing his medical records. Plaintiff instructed the Clinic not to release his records and, on that basis, the Clinic has produced no medical records pursuant to the subpoena.

Statement of IBM's Position as to Why Plaintiff Should be Compelled to Instruct the Clinic to Release his Medical Records

First, the plaintiff's medical records are relevant and discoverable in that plaintiff has put his medical and emotional health directly in issue in this case. IBM has the right

and need to review plaintiff's medical records to explore the true nature of his physical and emotional injuries, and to ascertain other possible stressors or causes of distress.

Second, plaintiff again has waived any objections he might have had to the production of his medical records by not objecting to IBM's medical interrogatories and document requests, and by not moving for a protective order with respect to the subpoena to the Dartmouth-Hitchcock Clinic.

Therefore, plaintiff should be ordered to instruct the Clinic to release his medical records to IBM's counsel. In the alternative, IBM's counsel should be permitted to have a new subpoena issued to the Clinic.

IV.   CONCLUSION

For all of the above reasons, IBM's motion to compel should be allowed.

Respectfully submitted,

INTERNATIONAL BUSINESS
MACHINES CORPORATION

By its attorneys,

Daniel S. Tarlow, BBO #552920
Laurie F. Rubin, BBO #564947
Prince, Lobel, Glovsky & Tye LLP
585 Commercial Street
Boston, MA 02109
(617) 456-8000

Dated: 2/18/05

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by (hand)(mail) on 2/18/05.