|    |     |                                                                 |
|----|-----|-----------------------------------------------------------------|
| 1  |     | MR. POWERS: And the question is whether                         |
| 2  |     | they found another job within IBM.                              |
| 3  |     | THE WITNESS: Within IBM.                                        |
| 4  |     | And you're talking specifically about the                       |
| 5  |     | people that were notified of layoff, not anybody                |
| 6  |     | else.                                                           |
| 7  |     | BY MR. TARLOW:                                                  |
| 8  | Q.  | Correct.                                                        |
| 9  | A.  | Okay. I don't recall that anyone else                           |
| 10 |     | received another position within IBM, but I'm not               |
| 11 |     | certain of that.                                                |
| 12 | Q.  | And you sued Digital Equipment Corporation for                  |
| 13 |     | age discrimination, is that right?                              |
| 14 | A.  | Yes.                                                            |
| 15 | Q.  | Can you just describe that.                                     |
| 16 | A.  | Let me amend that, I didn't sue them.                           |
| 17 | Q.  | You had a complaint with the MCAD --                            |
| 18 | A.  | I filed a complaint with the MCAD.                              |
| 19 | Q.  | You never moved it to court, is that correct?                   |
| 20 | A.  | That's correct. It was voluntarily withdrawn.                   |
| 21 | Q.  | And what was the essence of the allegations in                  |
| 22 |     | that case?                                                      |
| 23 | A.  | I'm trying to think at this point.                              |
| 24 |     | MR. POWERS: I think he's asking the                             |

```
 1              essence, which you say, for instance, is it a claim
 2              of age discrimination.
 3                      MR. TARLOW:  Well, I think we've already
 4              established that, so maybe I should go beyond that
 5              with my question, then.
 6                      THE WITNESS:  It was a case of age
 7              discrimination.
 8                      BY MR. TARLOW:
 9         Q.   Did it relate to your layoff by Digital
10              Equipment Corporation?
11         A.   It didn't relate to the layoff.
12         Q.   You were not claiming age discrimination in
13              the layoff?
14         A.   I was claiming age discrimination on the job.
15              I don't recall whether I was claiming it as a part
16              of the layoff or not.
17         Q.   Do you still have a copy of the Complaint in
18              that action?
19         A.   No.  Well, I may at home someplace, but ...
20         Q.   I asked -- we did ask that it be produced, and
21              it wasn't produced.  I'm going to ask again that it
22              be produced, just a copy of the Complaint, so we
23              can see what the allegations are.
24                      MR. POWERS:  We will produce -- if there
```

1        those came up, the working conditions, the nature
2        of the work that I was being assigned. I was
3        humiliated.
4  Q.     And were you depressed from April '97 when you
5        were demoted through the end of your employment?
6  A.     I think periodically.
7  Q.     And what were the manifestations of the
8        depression?
9  A.     Oh, just a feeling of -- what you would
10       expect, a feeling of sadness, worthlessness,
11       relations at home, increased stressed levels. I
12       have a medical condition that's aggravated by
13       stress, and I think we provided the medical records
14       on that.
15  Q.    And that's a dermatological condition?
16  A.    Yes.
17  Q.    Is that psoriasis? What is it?
18  A.    No, it's recalcitrant excema.
19  Q.    And were you frequently depressed during the
20       period you reported to Pat McGloin?
21  A.    "Frequently" meaning what in your --
22  Q.    Weekly.
23  A.    I wouldn't say continually. I would say these
24       are related to events as they came along. And my

```
1    Q.        How often?
2    A.        How often what?
3    Q.        Did you seek out treatment for the depression
4              or stress you were feeling?
5    A.        I would say probably maybe one or two
6              occasions with my primary physician.
7    Q.        With anybody else?
8    A.        I didn't see a specialist.
9    Q.        And what did your primary physician do or
10             recommend?
11   A.        He prescribed some medication to get me over
12             the hard spots.
13   Q.        What medication?
14   A.        Some sort of a sedative.
15   Q.        Who was your primary care physician?
16   A.        Frederick Bruch, B-R-U-C-H.
17   Q.        Where is he located?
18   A.        He's at the Dartmouth-Hitchcock Clinic.
19   Q.        Where is that located?
20   A.        Keene, New Hampshire.
21   Q.        You said you did not recall what he
22             prescribed?
23   A.        No.  It was some sort of a sedative, but I
24             don't know what it was.
```

1    Q.         How long did you take that sedative for?
2    A.         I didn't take it continually. I would take it
3    if -- what would happen is if I was feeling
4    stressed, the recalcitrant excema would kick in,
5    and I would take one of these tablets, and that
6    would sort of break the cycle. And then I wouldn't
7    take -- I didn't take them every day.
8    Q.         When you get the recalcitrant excema, where
9    does it show up on you?
10   A.         Basically it could be anywhere on my body.
11   Q.         And how often did you experience sleeplessness
12   during the period you were working for IBM as a
13   result of the depression you suggest that you were
14   experiencing from time to time?
15   A.         It could have been, again, related to events.
16   If there was a particular event going on, "event"
17   meaning an opportunity lost or something like that,
18   sleeplessness might go on for two or three nights.
19   Q.         You were claiming at the same time that you
20   were employed at IBM -- well, strike that. When
21   did your case against Digital get resolved?
22   A.         I don't recall.
23              MR. TARLOW: I'll be right back.
24              (Pause.)

|    |    |    |
|----|----|----|
| 1  |    | BY MR. TARLOW: |
| 2  | Q. | This is a letter we got from the MCAD with the |
| 3  |    | information that they had about your case. They |
| 4  |    | don't have a file, but they have a printout. And |
| 5  |    | it indicates on this printout from the MCAD that |
| 6  |    | the case was closed -- was conciliated in December |
| 7  |    | 1999. Does that ring a bell -- refresh your |
| 8  |    | memory? |
| 9  | A. | No. |
| 10 | Q. | Well, the point I was going to raise is: were |
| 11 |    | you claiming emotional distress in that case |
| 12 |    | against Digital Equipment Corporation? |
| 13 | A. | I'd have to refer to the Complaint. I don't |
| 14 |    | recall at this point. |
| 15 | Q. | Were you experiencing any emotional distress |
| 16 |    | as a result of the events that you were complaining |
| 17 |    | about in the Digital case during the time you |
| 18 |    | worked for IBM? |
| 19 | A. | No, I don't believe so. I believe at that |
| 20 |    | point, once I started with IBM, I put the Digital |
| 21 |    | thing behind me. |
| 22 | Q. | Did you report that to the MCAD, you dropped |
| 23 |    | your emotional distress at that point? |
| 24 |    | MR. POWERS: Well, wait a minute. I |

```
 1   don't think he's saying that he dropped the
 2   emotional distress.  I think he's saying that once
 3   he joined IBM, he no longer experienced emotional
 4   distress.
 5           MR. TARLOW:  Well, I'd like to see if
 6   that's consistent between the two cases, because he
 7   joined IBM shortly after leaving DEC.  And he
 8   continued to be suing DEC for some number of years
 9   while working at IBM.  And I would be surprised if
10   he wasn't claiming ongoing emotional distress as a
11   result of the events at DEC that is overlapping
12   with what he's talking about here.
13           MR. POWERS:  Well, you're never going to
14   find that out.
15           MR. TARLOW:  Why is that?
16           MR. POWERS:  Well, you have all the
17   documents.
18           MR. TARLOW:  Have you produced everything
19   that you have regarding the case against DEC?
20   You've produced nothing.
21           MR. POWERS:  I don't have anything, so
22   you can ask him.
23           BY MR. TARLOW:
24   Q.      Do you have any files at home regarding the
```

Case 1:04-cv-10069-DPW    Document 14-2    Filed 03/01/2005    Page 8 of 19

125

```
 1            case against DEC?
 2      A.    I'd have to check. I don't know. It's been a
 3            number of years.
 4                  MR. TARLOW: I think it's clearly
 5            relevant. But more relevant, I think, having gone
 6            through this exercise today than we even realized
 7            before.
 8                  THE WITNESS: It's a matter of public
 9            record --
10                  MR. POWERS: You don't have to argue
11            about. I don't dispute relevancy. If we have --
12            if he has in his possession documents regarding the
13            case against DEC, we will produce them.
14                  BY MR. TARLOW:
15      Q.    Were there any other events in your life
16            during your tenure with IBM, before your layoff,
17            that were causing you stress or occasional feelings
18            of being depressed?
19      A.    When was the date that I joined IBM? I'm
20            sorry, was it 19 --
21      Q.    '95.
22      A.    '95. Not that I can recall at the moment.
23      Q.    And how did the events at IBM affect your --
24            that's before your layoff -- affect your
```

| | | |
|---|---|---|
| 1 | | or the physical manifestations of emotional harm? |
| 2 | A. | Yes, I did. |
| 3 | Q. | With whom and when? |
| 4 | A. | I saw a dermatologist in Keene, New Hampshire, |
| 5 | | Richard Seymour, S-E-Y-M-O-U-R, I believe. He's at |
| 6 | | the same institution, the Dartmouth-Hitchcock |
| 7 | | Clinic in Keene. |
| 8 | | There may have been another dermatologist, but |
| 9 | | I can't recall the name right now. |
| 10 | Q. | Did you seek any other treatment or assistance |
| 11 | | from any other health care professional other than |
| 12 | | Richard Seymour regarding whatever you experienced |
| 13 | | as a result of the layoff? |
| 14 | A. | Only the aforementioned primary care |
| 15 | | physician, Dr. Bruch. |
| 16 | Q. | And what Dr. Bruch do or recommend? |
| 17 | A. | He basically gave me something to kind of help |
| 18 | | me relax and as a sedative. |
| 19 | Q. | When was that? |
| 20 | A. | It was sometime after the layoff. |
| 21 | Q. | How soon after the layoff? |
| 22 | A. | I don't know. I don't remember. |
| 23 | Q. | How long did you take the sedative for? |
| 24 | A. | I take it infrequently. |

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| Dennis Rossiter,<br>　　　　　Plaintiff<br><br>v.<br><br>International Business Machines<br>Corporation,<br>　　　　　Defendant | C.A. No. 04-CR-10069-DPW |

### AFFIDAVIT OF LINDA EVANS

I, Linda Evans, under oath depose and state as follows:

1.	I am an attorney (associate) with Rodgers, Powers & Schwartz LLP, 18 Tremont Street, Boston, Massachusetts 02108, and represent, along with Kevin G. Powers (partner), Plaintiff in the above-referenced action. I make this affidavit solely in support of Plaintiff's Opposition to Defendant's Motion to Compel.

2.	I worked with Plaintiff in September and October 2004 in the preparation of Plaintiff's answers and responses to the Defendant's discovery requests. Toward this end, I communicated frequently with Plaintiff about his answers to interrogatories, responses to document requests, and produced documents. Plaintiff repeatedly assured me throughout this process that he had conducted a search for requested documents and that he had provided all responsive documents that he had located. Plaintiff did not provide any documents concerning his 1994 MCAD complaint against Digital Equipment Corporation ("DEC").

3.      Plaintiff served his produced documents on IBM on October 12, 2004, and he served his answers to interrogatories on October 14, 2004.

4.      I telephoned Plaintiff on February 28, 2005, to confirm that he did not have any documents in his possession that related to his 1994 MCAD complaint against DEC. I asked Plaintiff how he was able to provide the Defendant with the docket number of the 1994 MCAD case, in his answers to interrogatories. Plaintiff told me that he had entered the docket number into his personal organizer a long time ago, and he retrieved the stored information from the organizer to provide to the Defendant in his interrogatory answers.

5.      Plaintiff also told me in our telephone conversation on February 28, 2005, that he knew with certainty that he had "tossed out" the MCAD documents a while back because he could not find any of the documents, in the Fall of 2004, or after he was deposed and asked about the documents, in December 2004. Plaintiff stated that he recently lost the docket number from his personal organizer, when all of the organizer's data was lost due to a run-down battery.

6.      As part of my representation of clients, I have made requests to Jeffrey Turner, Administrator of Public Records, at the MCAD, for information about the cases that have been filed against a particular defendant. On some occasions, Mr. Turner has made files of closed cases against the defendant available to me, for review and copying at the MCAD. On other occasions, Mr. Turner has provided only a printout list of the closed and the active cases filed against the defendant.

7.  Plaintiff does not intend to call a physician or counselor to testify in this action.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY on this \_\_1st\_\_ day of March, 2005.

_____
Linda Evans

ExhibitLEAff

3

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DENNIS ROSSITER,
    Plaintiff

CIVIL ACTION NO. 04-10069-DPW

v.

INTERNATIONAL BUSINESS MACHINES CORPORATION,
    Defendant

## SCHEDULING ORDER

WOODLOCK, D.J.

This Order is intended primarily to aid and assist counsel in scheduling and planning the preparation and presentation of cases, thereby insuring the effective, speedy and fair disposition of cases, either by settlement or trial.

The above-entitled action having been heard on May 6, 2004, it is hereby ORDERED pursuant to Rule 16(b) of the Federal Rules of Civil Procedure and Local Rule 16.1(F), that:

(1) all trial experts are to be designated and disclosure of information contemplated by FRCP, Rule 26 provided by the plaintiff(s) no later than **JANUARY 4, 2005**, and by the defendant(s) no later than **JANUARY 4, 2005**; Rebuttal expert disclosures shall be made by no later than **FEBRUARY 4, 2005**; Deposition discovery of experts may be conducted through **MARCH 4, 2005**;

(2) discovery is to be completed by **JANUARY 4, 2005**, unless shortened or enlarged by Order of this Court;

(3) motions for summary judgment are to be filed by **MAY 4, 2005**, after completion of the necessary discovery and responses are to be filed within fourteen (14) calendar days thereafter pursuant to Local Rule 7.1 and all filings must conform to the requirements of Local Rule 56.1;

(4) **ELECTRONIC FILING**: All future submissions in this case are subject to electronic filing and all counsel who choose to appear must make arrangements to register for participation in electronic case filing, if they have not already done so. In addition to electronically filing any pleading, counsel shall also file all submissions relating to dispositive matters with the Court in hard

copy, clearly marked **"Courtesy Copy - Do Not Scan"** on the cover page of <u>each</u> pleading/submission. Notices, orders and memoranda of the Court will only be filed and served electronically.

(5)  A further scheduling/status conference is set for **JUNE 15, 2005 AT 2:30 P.M.** in Courtroom 1 on the 3rd floor before Hon. Douglas P. Woodlock, U.S.D.J.  By **JUNE 8, 2005**, the parties shall file a STATUS REPORT indicating the current status of the case, including discovery proceedings, settlement discussions, pending or contemplated motions, proposed dates for pretrial conferences and for trial, and any other matters which should be addressed at the further conference.

All provisions and deadlines contained in this order having been established with the participation of the parties to this case, any requests for modification must be presented to the judge or magistrate judge, if referred for case management proceedings. Any requests for extension will be granted only for good cause shown supported by affidavits, other evidentiary materials, or reference to pertinent portions of the record. The request shall be made by motion and shall contain the reasons for the request, a summary of the discovery which remains to be taken, and a date certain when the requesting party will complete the additional discovery, join other parties, amend the pleadings or file motions. The Court may then enter a final scheduling order, if necessary.

Counsel are encouraged to seek an early resolution of this matter. Additional case management conferences may be scheduled by the court or upon the request of counsel, if the Court can be of assistance in resolving preliminary issues or in settlement.

By the Court,

/s/ Rebecca Greenberg
Deputy Clerk

DATED: May 6, 2004

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE
2004 JAN 12 P 3:02
U.S. DISTRICT COURT
DISTRICT OF MASS.

DENNIS ROSSITER,  )
    Plaintiff,  )
  )
v.  )  04 CR 10069 DPW
  )
INTERNATIONAL BUSINESS  )
MACHINES CORPORATION,  )
    Defendant.  )
  )

## COMPLAINT

A.   Preliminary Statement:

This action for damages and other relief is brought pursuant to Massachusetts General Law ch. 151 B as well as the Age Discrimination in Employment Act 29 U.S.C. § 621 et seq.

The Court is asked to exercise its pendant jurisdiction over the State Claims because the State Claims arise from a Common nucleus of operative facts as the Federal Claims.

B.   Parties to the Action:

1.   PLAINTIFF

The Plaintiff Dennis Rossiter is a resident of Hancock, New Hampshire. At all relevant times the Plaintiff was employed by the Defendant Corporation in Massachusetts.

2.  DEFENDANT

The Defendant International Business Machines Corporation is a Corporation doing business in the Commonwealth of Massachusetts. During all relevant time the Defendant Corporation employed the Plaintiff in its corporate offices located in the City of Waltham, County of Middlesex, Commonwealth of Massachusetts.

## COUNT I--M.G.L. 151B Claim

3.  Dennis L. Rossiter (hereinafter the Plaintiff), was at all relevant times, over 40 years of age, his date of birth is January 16, 1942.

4.  In 1995 the Plaintiff began working in the Marketing Group of the Defendant International Business Machines Corporation's (hereinafter IBM) Microelectronics Division.

5.  The Plaintiff was the oldest employee in the Marketing Group.

6.  During the time the Plaintiff worked for IBM, he received excellent performance evaluations, and positive input from his supervisors and fellow employees.

7.  On January 3, 2002 the Plaintiff was laid off.

8.  Preceding the Plaintiff's lay off, he was functionally demoted, treated differently than younger employees in his Group, and not offered the

opportunity to compete for positions offered to younger employees, and for which he was well qualified.

9. Although the Plaintiff was laid off, his job was, in fact, not eliminated.

10. Two younger employees took over the job duties and responsibilities that the Plaintiff had previously performed.

11. One of the younger employees who took over the Plaintiff's job had previously been removed from a job identical to the one the Plaintiff was losing. This employee was being re-assigned to the Plaintiff's job after having failed to perform adequately in her prior assignment.

12. The other employee displacing the Plaintiff was a recent college graduate in his early twenties, who had been with IBM less than a year.

13. Younger, less experienced employees filled jobs for which the Plaintiff was well qualified.

14. Some of the jobs that were filled by employees who were younger than the Plaintiff were not posted to the IBM "Jobs Book".

15. Filling positions without first posting them in the IBM's "Jobs Book" was a violation of company policy.

16. Within IBM Microelectronics Division's Marketing Group, employees in the 50+-age category comprised 22% of the employee

population, but were subjected to 60% of the lay-offs within their age grouping.

17. The decision to lay off the Plaintiff and retain other younger employees was made on account of the Plaintiff's age.

18. The Plaintiff has suffered lost wages and emotional distress as a result of the Defendant's actions.

## COUNT II--ADEA CLAIM

19. The Plaintiff realleges, reasserts and incorporates by reference the facts and allegations set forth in paragraphs 1 through 18 above.

20. As a result of the Defendants' actions the Plaintiff has suffered lost wages and emotional pain and suffering.

Wherefore, the Plaintiff demands that this Court order:

    a. that the Defendants compensate Plaintiff for any loss of wages and/or benefits incurred as a result of his termination;

    b. that the Plaintiff be awarded an amount of money which will fairly compensate him for his emotional and physical pain and suffering;

    c. that the Defendant pay the Plaintiff costs and attorney's fees resulting from this action;

    d. that the Defendant pay the Plaintiff interest on any judgment entered from the time of the filing of this suit;

    e. that the Defendant be ordered to pay the Plaintiff punitive damages;

f.  that the Defendant be ordered to pay the Plaintiff exemplary damages;

g.  that the Defendant be ordered to reinstate the Plaintiff to his position in the Marketing Group of IBM; and

h.  such relief as may be just and proper and/or which will make the Plaintiff whole.

The Plaintiff Requests a Jury Trial on All Issues and Causes of Action Contained in this Complaint.

Respectfully submitted,

The Plaintiff
By his attorneys,

_____
Kevin G. Powers, BBO# 405020
Robert S. Mantell, BBO# 559715
Rodgers, Powers & Schwartz LLP
18 Tremont Street
Boston, MA 02108
(617) 742-7010