## DISTRICT OF MASSACHUSETTS
## UNITED STATES DISTRICT COURT

|  |  |  |
|---|---|---|
| Dennis Rossiter,<br>**Plaintiff** | )<br>)<br>)<br>) | |
| **v.** | )<br>) | **C.A. No. 04-CV-10069DPW** |
| **International Business Machines<br>Corporation,**<br>**Defendant** | )<br>)<br>)<br>)<br>) | |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF HIS
## MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS

### I. Introduction

This is an employment discrimination case, filed by Dennis Rossiter

("Plaintiff" or "Rossiter") against International Business Machines Corporation

("IBM") alleging age discrimination. After an illustrious career path in marketing

communications, including serving as Director of Communications at Exxon

Corporation and Wang Laboratories, Rossiter accepted a position at IBM in 1995,

as Manager of Communications for the Power PC Product line, at the level-10 job

band with managerial responsibilities. Rossiter was 53 years of age at the time of

his hire.

Rossiter has alleged and testified that his managers at IBM treated him in a

negative and disparate manner based on his age. This negative, disparate

treatment included demoting Rossiter; offering advancement opportunities to less

experienced, younger employees while withholding such opportunities from

Rossiter; hiring employees just prior to the lay-off to replace Rossiter; and assigning Rossiter's job responsibilities to younger, substantially less experienced employees, including a recent hire right out of college and an employee who had problems performing the same job functions for a different business line. Pl.'s Rule 56.1 Statement of Facts in Dispute ("SOF"), ¶¶ 1.3, 1.6-1.8, 1.10, 1.19, 1.21-1.29, 2.12-2.13, 2.21. Rossiter has also alleged and shown that the selection process for the lay-off was not age-neutral; Rossiter's RIF score did not reflect his capabilities; and a disproportionate number of older employees were terminated. Opposition to Summary Judgment ("Opp."), at 12-14; SOF, ¶¶ 1.20, 1.33, 1.35-1.40-1.47, 2.5, 2.10-2.13, 2.18, 2.20; see Currier v. United Technologies Corp., 393 F.3d 246 (1st Cir. 2004) (jury heard testimony that 61-year-old employee's RIF score did not reflect his capabilities and could reasonably conclude that employee's age was his supervisor's real reason for selecting him for termination).

## A. Plaintiff's Attempts to Avoid Discovery Problems

In addition to objecting that Rossiter's document requests were "vague," "overbroad," "unduly burdensome," and not "relevant," IBM responded to many of Rossiter's requests for documents by stating that IBM required a confidentiality agreement before it would produce documents. IBM's Doc. Resp., Nos. 3-4, 7-9, 12, Exhibit 1. IBM also withheld documents on the grounds that production would violate the privacy of other employees. Id. at Nos. 3, 7, 11, 13, 17. In all, IBM's document production was substantially to totally deficient in response to thirteen (13) out of Rossiter's seventeen (17) document requests.

2

On December 15, 2004, the parties signed a Stipulated Confidentiality and Nondisclosure Order. Notwithstanding this signed document, IBM failed to supplement its document production. In order to try and amicably resolve this stalemate, Plaintiff's counsel, Kevin G. Powers, wrote a letter, dated March 14, 2005, to IBM's counsel, Daniel Tarlow, in which he reminded Mr. Tarlow about the signed confidentiality agreement and requested that IBM produce documents responsive to thirteen (13) of Rossiter's document requests. Powers 3/14/05 Letter, Exhibit 2. Mr. Tarlow responded to Rossiter's renewed requests in a letter, dated April 4, 2005, and attached documents to a letter, dated April 11, 2005, which were responsive to two (2) of the thirteen (13) requests for which Rossiter seeks documents. Tarlow 4/4/05 Letter, Exhibit 3; Tarlow 4/11/05 Letter, Exhibit 4 (without attachments).

The parties have proceeded through discovery; a hearing is scheduled for October 5, 2005, on IBM's motion for summary judgment; and IBM continues to withhold discoverable documents, which are relevant and important to Rossiter's claims and to the trial of this action.

## II. Broad Discovery Is Allowed in an Employment Discrimination Case

Fed. R. Civ. P. 26(b)(1) broadly provides for the discovery of all information that is relevant or "appears reasonably calculated to lead to the discovery of admissible evidence" so long as the materials sought are not privileged. Relevancy is also construed broadly, encompassing "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue

3

that is or may be in the case." Cronin v. Strayer, 392 Mass. 525, 534 (1984).   In

Sweat v. Miller Brewing Co., 708 F.2d 655, 658 (11th Cir. 1983), the court stated,

"[W]e note that liberal discovery rules are applied in Title VII litigation." See Rich

v. Martin Marietta Corp., 522 F.2d 333, 343-344 (10th Cir. 1975) (discovery in

discrimination cases should not be narrowly circumscribed); Scales v. J.C.

Bradford & Co., 925 F.2d 901, 906 (6th Cir. 1991) (in Title VII lawsuit, the

employer's general practices are relevant even when the plaintiff is asserting an

individual claim for disparate treatment).

The "very essence of [a discrimination claim] is comparative evidence: Was

the plaintiff treated differently from persons not in [his] protected group?"

Weinstock v. Columbia Univ., 1995 U.S. Dist. LEXIS 14003, *19 (S.D.N.Y.),

aff'd, 1996 U.S. Dist. LEXIS 16779 (S.D.N.Y. 1996).  For this reason, courts have

customarily permitted a wide discovery of personnel files and performance

documents of comparators in discrimination cases. Jackson v. Harvard Univ., 111

F.R.D. 472, 475-476 (D. Mass. 1986) (allowing discovery of tenure files of male

employees granted tenure over 10-year period to provide plaintiff with opportunity

to demonstrate that female employees with similar qualifications were evaluated

under stricter standard, and recognizing that such documents may raise doubt as to

whether defendant's reasons for adverse employment actions were the real ones);

Weahkee v. Norton, 621 F.2d 1080, 1082 (10th Cir. 1980) (finding district court

abused its discretion by denying plaintiff in discrimination case discovery of co-

workers' personnel files where comparative job performances were at issue).

### III.  Responses to Plaintiff's Requests for Production of Documents

### A.  Requests Concerning Comparators

The following requests seek documents concerning Rossiter's comparators

at IBM, which IBM has either objected to completely or has objected to and

produced only some of the documents requested.

### First Request No. 3

Provide salary plans, including compensation increases, cash awards and performance ratings, and date of birth for all Technology Group and Microelectronics Group marketing personnel from January 1997 to present.

### Response

IBM objects to this request on the grounds that it is vague, overbroad, unduly burdensome and seeks documents which are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. IBM also objects to producing documents that would violate the privacy of another employee or would provide confidential information concerning another employee. Subject to and without waiving these objections, upon plaintiff's execution of a suitable confidentiality stipulation, IBM will produce documents that reflect the performance ratings (PBC's) of employees who worked under Patricia McGloin at the time of the layoff affecting the plaintiff, and who were the comparators for the plaintiff in the layoff (i.e., the Band 9, non-managerial employees), and the ages of each such employee.

### Rossiter Letter of March 14, 2005

IBM has failed to produce documents responsive to this request; that is, the performance evaluations and other requested documents concerning all Technology and Microelectronics Group marketing personnel from January 1997 to the present. The requested documents include, but are not limited to, the comparator evaluations, e.g., ratings on selection criteria, for layoff of the employees who worked under Patricia McGloin at the time of Plaintiff's layoff.

### Response

In our December 16, 2004 production, we produced the information specified in your letter for the relevant group of comparators: Ronald Milos, Kathy

Weaver, Karen Spilke, and Deborah Guynn.  These are the other skill group members to whom Mr. Rossiter was compared for purposes of the lay-off selection decision.  For this group we produced the comparator selection worksheets, as well as the performance ratings for the years 1998-2001.  We also produced the dates of birth of all employees in Pat McGloin's group.

Request No. 7

All resumes and any other document which identify the educational background, work background, birth dates, job titles, and job codes of the IBM employees who work or worked to support IBM Technology Group Marketing and/or IBM Microelectronics Marketing, between January 1998 and January 2002, including the following employees:

a)  Karen J. Smith, IMC Strategist/Server Group;
b)  Carol McNerney, Brand Marketing & Corporate Programs;
c)  Cynthia Puttlitz, IMC Manager PowerPC;
d)  Ray Chang, Program Manager/Naming;
e)  Marge Oppold, Manager/Event Marketing;
f)  Phillip Bender, Manager of Marketing Services/Microelectronics Server Group;
g)  Ed Abrams, Director Integrated Marketing Communications IBM Technology Group; and
h)  Rob Rohrer, Interactive Marketing Manager

Response

IBM objects to this request on the grounds that it is vague, overbroad, unduly burdensome and seeks documents which are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.  IBM also objects to producing documents that would violate the privacy of another employee or would provide confidential information concerning another employee.  Subject to and without waiving these objections, upon plaintiff's execution of a suitable confidentiality stipulation, IBM will produce resumes of those other employees who worked under Patricia McGloin at the time of the layoff affecting the plaintiff, and who were the comparators for the plaintiff in the layoff (i.e., the Band 9, non-managerial employees), to the extent that such documents can be located after a reasonable search.

Rossiter Letter of March 14, 2005

Again, IBM attempts to impermissibly limit Plaintiff's request. Plaintiff seeks all documents responsive to this request concerning the eight (8) identified employees.

Response

Without waiving the objections, we will agree to produce resumes (if any exist and can be located through a reasonable search), work detail history reports and dates of birth for the people listed in the request except for Phil Bender for the reasons stated above.

Request No. 9

All documents which reference, identify or discuss IBM's position set forth in its letter from Michel Mayer, General Manager IBM Microlectronics Division, to Mr. Rossiter that there was a requirement for "skills rebalancing" necessary to reduce costs, including:

a) Memos, meeting notes, and/or e-mails between and/or among Patrica McGloin, Mark Lefebvre, IBM Human Resources, and any other IBM employee which discuss the need for employees with certain skills and how skills would be "balanced;"
b) Copies of all resumes of IBM employees in Microelectronics Marketing and/or Technology Group Marketing that show evidence of required skills; and
c) Copies of skills assessment worksheets pertaining to Mr. Rossiter and all other IBM Microelectronics and IBM Technology Group Marketing employees.

Response

IBM objects to this request on the grounds that it is vague, overbroad, unduly burdensome and seeks documents which contain confidential business information and documents which are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, and subject to the plaintiff agreeing to a suitable confidentiality stipulation, IBM will produce documents that reflect the number of employees targeted for layoff (in the layoff affecting plaintiff) and who worked for IBM in departments reporting to Mr. Lefebvre, to the extent that such documents can be located after a reasonable search. IBM also refers plaintiff to the documents produced in response to Document Requests No. 2 and 9.

Rossiter Letter of March 14, 2005

IBM has failed to produce documents which are responsive to this request and impermissibly seeks to restate and narrow Plaintiff's request.

Response

We produced the documents we were able to locate through a reasonable search, including the selection guidelines which set forth the methodology of skill group analysis, selection work sheets for the skill group members to which Mr. Rossiter was compared, and the resumes we could locate for those skill group members. We also produced the Age and Title Information (OWBPA Report) for the MERA.

Request No. 15

Any and all documents upon which IBM relies to support their contention that the following employees were the most qualified candidates for their respective positions including but not limited to their personnel files:

a) Karen J. Smith, Integrated Marketing Communications Strategist;
b) Ray Chang, Naming Programs;
c) Carol McNerney, Brand Marketing & Corporate Programs;
d) Marge Oppold, Events Marketing;
e) Edward Abrams, Director Integrated Marketing Communications; and
f) Patricia McGloin, Manager Integrated Marketing Communications.

Response

IBM objects to this request on the grounds that it is vague, overbroad, unduly burdensome and seeks documents which are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Moreover, the request assumes that IBM "contends" that the above-named individuals "were the most qualified candidates for their respective positions," which is a "contention" that assumes facts that have no bearing on this case. IBM points out that none of the above-named individuals were comparators to Rossiter in the layoff process and Rossiter did not compete with any of these individuals for positions at IBM. IBM also objects to producing documents that would violate the privacy of another employee or would provide confidential information concerning another employee.

8

<u>Rossiter Letter of March 14, 2005</u>

IBM's response to the request is not responsive.  Plaintiff seeks the resumes of the six (6) individuals identified in the request.

<u>Response</u>

Without waiving the objections, see response to 7 above.  We will also produce Ms. McGloin's and Ms. Smith's resumes to the extent they can be located through a reasonable search.

<u>Request No. 17</u>

Documentation of skill groups identified by Ms. Patricia McGloin which included an assessment of numerous employees and how the skills of those employees matched the skills needed by IBM.

<u>Response</u>

IBM objects to this request on the grounds that it is vague, overbroad, unduly burdensome and seeks documents which are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.  IBM also objects to producing documents that would violate the privacy of another employee or would provide confidential information concerning another employee.  Subject to and without waiving these objections, IBM refers Rossiter to the documents produced in response to Request No. 9, subject to Rossiter entering into a suitable confidentiality stipulation.

<u>Rossiter Letter of March 14, 2005</u>

IBM refers to its response to Request No. 9, for which the Defendant has only produced "IBM Marketing Professional Career Skills List By Job Level Integrated Marketing Communications Discipline," dated May 2001, which does not adequately address either Request No. 9 or Request No. 17.

<u>Response</u>

We produced the selection work sheets for the skill group members to which Mr. Rossiter was compared.

**Argument**

As a threshold matter, IBM consistently distorts Rossiter's comparator group and erroneously argues that Rossiter's comparators are confined to band 9, non-managerial employees who reported to McGloin. The appropriate comparator group is comprised of the 46 employees in Lefebvre's Microelectronics Marketing Division, and Rossiter has impermissibly been denied performance and skill set documents for these comparators. SOF, ¶¶ 1.30-1.33, 1.41-1.46, 2.4-2.5. IBM, by falsely arguing that Rossiter's comparators are confined to band 9, non-managerial employees who reported to McGloin, has withheld documents that are relevant to Rossiter's claims of disparate treatment prior to the lay-off; a lay-off process that failed to follow the guidelines and subjected some, but not all, or even most employees to a skills assessment; and retention of less qualified, younger workers to perform Rossiter's job responsibilities after his termination. IBM concedes elsewhere in its responses that layoff targets were established for Lefebvre's Division, not for McGloin's group, let alone for only one band within McGloin's group. See Request No. 8, Response to Rossiter 3/14/05 Letter.

Two of Rossiter's younger replacements were hired by LeFebvre, assigned Rossiter's responsibilities by Lefebvre, and retained by Lefebvre – not by McGloin. SOF, ¶¶ 1.21-1.28, 2.12. Further, all employees within the Division competed for job openings, not merely those in one band or those who reported to McGloin. SOF, ¶¶ 1.12, 2.21. IBM's refusal to produce comparative evidence

about the job performance and skill sets of Rossiter's co-workers in the

Microelectronics Marketing Division violates the "very essence" of Rossiter's

discrimination claim. Weinstock v. Columbia Univ., 1995 U.S. Dist. LEXIS at

*19; Matthews v. Ocean Spray Cranberries, Inc., 426 Mass. 122, 129 (1997) ("The

most probative means of establishing [pretext for discrimination]" is to

demonstrate that similarly situated employees not in the same protected category

were treated differently).  See Diaz v. Massachusetts Mutual Life Ins. Co., 2005

Mass. Super. LEXIS 196, *3 (2005) ("[R]ecords of employees who worked in

plaintiff's department and who may have been promoted or affected by an adverse

employment decision are relevant to the plaintiff's claims of discriminatory

practice at MassMutual.").

In addition, IBM has failed to provide a factual showing, as required, for its

boilerplate objections of overbreadth and undue burden. Kerr-McGee v. Texas

Okla. Express, Inc., 43 F.R.D. 336, 338 (D. Okla. 1967).  Information in the

personnel files of Rossiter's comparators is clearly discoverable, and the

likelihood that useful, relevant materials are included in the files outweighs any of

the objections lodged against disclosure. Riffelmacher v. Board of Police

Comm'rs of Springfield, 27 Mass. App. Ct. 159, 163 (1989).  Under M.G.L. c.

149, § 52C, IBM is required to maintain personnel files, and be able to produce

such files within five days.  There is no evidence that provision of the files would

be overburdensome.  Thus, IBM should be required to produce the personnel files.

IBM also seeks to preclude discovery by referring to considerations of privacy or confidentiality of its employees. There is no statute that prohibits the production of the information requested. While information about comparators' performance and skill sets, as well as their personnel files, are properly discoverable, Plaintiff is sensitive to the privacy concerns of other employees. Ibrahim v. American Univ., 1999 U.S. Dist. LEXIS 8388, *3-4 (D.D.C. 1999) (ordering defendant in discrimination case to produce files of comparators subject to entry of appropriate protective order). Indeed, Plaintiff has already entered into a confidentiality stipulation with IBM, and thus, IBM's request for a confidentiality stipulation was disingenuous, and its refusal to produce necessary, discoverable documents, after the confidentiality stipulation was signed, is obstructionist. Plaintiff should be provided with the requested documents forthwith. Haykel v. G.F.I. Furniture Leasing Co., 76 F.R.D. 386 (N.D. Ga. 1976) (motion to compel production of personnel files and salary information granted).

### Documents Not Produced

Contrary to IBM's assertion concerning Request No. 3, the Defendant has not produced performance evaluations for McGloin's band-9 employees, let alone for Rossiter's actual comparator group – the 46 employees in LeFebvre's Microelectronics Marketing Division. Buckley Nursing Home, Inc. v. MCAD, 20 Mass. App. 172, 176 (1985) (applications of over 40 applicants reviewed to show that plaintiff's application was disparately treated). IBM has also failed to produce documents pertaining to comparators' salary plans, salary increases, and

bonuses. <u>Jackson v. Harvard Univ.</u>, 111 F.R.D. at 475 (information in co-workers' personnel files is clearly discoverable to determine the existence of a pattern of discrimination). Similarly, Rossiter continues to seek the resumes of all employees in LeFebvre's Division (Request No. 7) and all documents concerning Rossiter's skills, the skills and assessments of Rossiter's Division comparators, and/or IBM's "skills rebalancing" (Request Nos. 9, 15, 17).

### B. Requests Concerning Disparate Job Opportunities

Four (4) of Rossiter's requests seek documents concerning IBM's perceptions of Rossiter's and other employees' performance and skills, as well as documents pertaining to disparate job opportunities, which Monahan, Lefebvre, McGloin, and/or Abrams made available to selected younger, less qualified employees.

<u>Request No. 2</u>

Provide the contents of any and all employment files concerning Mr. Rossiter, including but not limited to:

> a) All communications, emails, so-called "desk files," meeting notes, and any and all other communications between Ms. Patricia McGloin, Manager Integrated Marketing Communications, Microelectronics Division, and Mr. Mark Lefebvre, Director Microelectronics Marketing, regarding Mr. Rossiter's skill assessment, performance, contribution and potential for future contribution and/or promotion;
> b) All communications, notes, "desk files," emails between James P. Monahan, Rossiter's former IBM Manager, and Monahan's successor, Patricia McGloin (Mr. Rossiter's direct manager) regarding any aspect of Mr. Rossiter's performance, skills, and potential for promotion; and
> c) All documents pertaining to Mr. Rossiter of any kind.

<u>Response</u>

IBM objects to this request on the grounds that it is vague, overbroad, unduly burdensome and seeks documents which are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, and to the extent the following documents can be located after a reasonable search, IBM will produce (a) Rossiter's PBC's, (b) the "360" reports from other employees regarding Rossiter, (c) the skills assessment of Rossiter that was completed before his selection for layoff, and (d) non-privileged communications regarding Rossiter's selection for layoff. In connection with said production, IBM refers plaintiff to the documents that IBM has already produced in response to request number 2 of plaintiff's first request for production of documents while his case was at the MCAD.

### Rossiter Letter of March 14, 2005

IBM has not produced LeFebvre's or Monahan's communications with Patricia McGloin.

### Response

We produced the documents we were able to locate through a reasonable search.

### Request No. 6

Provide copies of the Job Requisition forms for the following IBM jobs:

All Corporate, Technology Group, and/or Microelectronics Division Marketing Communications jobs that were filled between January 1998 and June 2002, including but not limited to:
b) Director, Integrated Marketing Communications Technology Group;
c) Corporate Events Operations Manager (James Hasl's Group);
d) Technology Group Events Manager;
e) Microelectronics Collateral Manager;
f) PowerPC Marketing Communications Manager and/or Programs Manager;
g) Microelectronics and/or Technology Group Brand Marketing & Corporate Programs Manager; and
h) Interactive Marketing Manager; and
i) Microelectronics Division/Server Group Marketing Services Manager.

### Response

IBM objects to this request on the grounds that it is vague, overbroad, unduly burdensome and seeks documents which are neither relevant nor

reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, IBM will produce Job Post reports for the only two positions that Rossiter applied for during the year before his layoff: Program Manager, Web Events and Integrated Marketing Communications Leader. In connection with said production, IBM refers plaintiff to the documents that IBM had already produced in response to request number 6 of plaintiff's first request for production of documents while his case was at the MCAD. IBM notes that one of these positions – the position of Integrated Marketing Communications Leader – was withdrawn and never filled. The other position was filled in April, but eliminated in late June.

### Rossiter Letter of March 14, 2005

IBM's response to the request is not responsive; that is, Plaintiff has requested the Job Requisition forms for ten categories of positions, not merely the positions of Integrated Marketing Communications Leader and Program Manager, Web Events.

### Response

Without waiving the objections, we will do a reasonable searach for the "job requisitions," if any exist, for the positions listed in subparts b), d), e), f), g), and h). Subpart a) is overbroad, unduly burdensome and seeks irrelevant information. Subpart c) relates to the job Jim Hasl was apparently hiring for at the time of the lay-off. According to your client's testimony, he has no complaint about not getting the job. Subpart i) relates to Phil Bender. As per your client's testimony, he didn't want the job Bender got. He initially feared Bender would "co-opt" him but in the end everything worked out. Your client's testimony has stripped these jobs of any possible relevance.

### Request No. 13

Copies of all communications, meeting notes, emails, memos from Mark Lefebvre to James Gianotti; Mark Lefebvre to Wendy Arnette; and Mark Lefebvre to any other IBM employee regarding continuing employment at IBM, specifically any communication relative to changing jobs before the layoffs were announced.

### Response

IBM objects to this request on the grounds that it is vague, overbroad, unduly burdensome and seeks documents which are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. IBM also objects to producing documents that would violate the privacy of another

employee or would provide confidential information about another employee. IBM points out that James Gianotti and Wendy Arnette were not comparators to Rossiter in the layoff and their employment at IBM was unrelated to the decision to lay off Rossiter.

## Rossiter Letter of March 14, 2005

IBM has failed to produce any documents responsive to the request and impermissibly and evasively seeks to redefine the scope of the request. The request addresses differential policies and practices at IBM, not narrowly-defined comparators to Plaintiff.

## Response

We were unable to locate any responsive documents through a reasonable search.

## Request No. 14

Copies of all business plans, presentations, or meeting notes created by Mark Lefebvre and/or Patricia McGloin pertaining to staffing proposals between January 2000 and January 2002.

## Response

IBM objects to this request on the grounds that it is vague, overbroad, unduly burdensome and seeks documents which contain confidential business information and documents which are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, IBM refers Rossiter to the organizational charts produced in response to Request No. 10, which reflect staffing.

## Rossiter Letter of March 14, 2005

IBM's response to this request is not responsive. Plaintiff seeks all documents created by Mark Lefebvre and/or Patricia McGloin pertaining to staffing proposals between January 2000 and January 2002.

## Response

We were unable to locate any responsive documents through a reasonable search.

## Argument

Rossiter incorporates by reference his arguments in Section A concerning Rossiter's comparators and IBM's objections of overbreadth, burdensomeness, and the privacy and/or confidentiality of other employees.  These requests seek information about managers' age-stereotyped perceptions of Rossiter, their staffing plans, and their disparately favorable assignments of jobs to Rossiter's younger, less qualified co-workers, right up to the time of the lay-off.  The requests are relevant to Rossiter's claims and testimony that (1) Monahan constructively, and then actually, demoted him and otherwise treated Rossiter as age-inappropriate for advancement, SOF, ¶¶ 1.3, 1.6-1.8; (2) Abrams and/or McGloin created un-posted manager positions for younger, less qualified employees at the same time that they rejected Rossiter's requests for additional projects and responsibilities, SOF, ¶¶1.12-1.19; and (3) Lefebvre hired Carol McNerney (32) and Ray Chang (early 20s), into the Division during alleged budget cuts; gave them Rossiter's job responsibilities; and retained both as employees after the lay-off. SOF, ¶¶ 1.21-1.28.  The earlier acts of discrimination are relevant to a pattern of discrimination against Rossiter and constitute background evidence of antecedent acts and of IBM's state of mind at the time it determined, in late 2001, who would be terminated, and who would be retained. Ruffino v. State St. Bank and Trust Co., 908 F. Supp. 1019, 1039 (D. Mass. 1995)

(antecedent discriminatory acts may be examined to determine the environment at the time of the act at issue).

To the extent that IBM has withheld documents in response to Request No. 2, on the basis of privilege, IBM has failed to provide a privilege log for any alleged privileged documents. Linscott v. Burns, 18 Mass. L. Rptr. 685, 2005 Mass. Super. LEXIS 19, *11 (2005) (plaintiff must produce a privilege log to identify documents allegedly covered by the patient-psychotherapist privilege).

Rossiter alleges that jobs were created and not posted to "cherry pick" promotions for certain younger, less qualified employees, and thus Rossiter was foreclosed from applying for jobs about which he had no knowledge until after his co-workers' promotions. SOF, ¶ 2.21. Therefore, in response to Request No. 6, Rossiter requires the job requisition forms for all of the positions that he has requested, not merely the forms for the jobs for which he applied. The fact that he later decided that he would not have wanted Phil Bender's job, or any other job, that was not posted, does not bear on the "fit" that may have existed *at the time* between Rossiter's skill sets and the position(s), nor on Rossiter's exclusion from notice of and/or consideration for the positions. The requisition forms, in combination with the skills assessments, performance documents, and resumes of comparators, which Rossiter requested and has not yet received, will provide a more complete picture of IBM's disparate treatment toward Rossiter and its age-biased RIF selection processes.

Request No. 13, requests information about Lefebvre's efforts to protect selected younger employees from lay-off by changing their positions prior to, or at the time of the lay-off, and is directly relevant to Rossiter's claim of Lefebvre's disparate, age-based treatment towards him as the lay-off approached. SOF, ¶¶ 1.21-1.28, 2.12. Request No. 14 seeks documents concerning staffing proposals between January 2000 and January 2002, which are relevant to projected skills requirements and positions, deviations from those requirements and positions for favored, younger employees, and the criteria allegedly used in the selection process for the lay-off.

To the extent that IBM has withheld requested documents on the grounds of "confidential business information," such alleged "confidential commercial information enjoy[s] no privilege from disclosure." Kleinerman v. United States Postal Serv., 100 F.R.D. 66, 69 (D. Mass. 1983). Pre-layoff communications of Lefebvre and McGloin pertaining to staffing proposals and requirements are central to Rossiter's claims that Lefebvre and McGloin promoted and protected younger, less qualified employees and that Lefebvre hired two substantially younger employees into the Division during budgetary cuts to assume Rossiter's responsibilities and then to replace him upon his termination. With the signed confidentiality stipulation in place, IBM has absolutely no basis for withholding the requested documents.

IBM's claim in responses to Request Nos. 2, 5, 8, 13, and 14 that it found no responsive documents and/or found no additional responsive documents "through

a reasonable search" is curious. Communication by email is ubiquitous at IBM, and the Defendant has unparalleled resources for data storage and retrieval. Three of these requests focus on communications between and among Rossiter's managers about Rossiter, the layoff, and/or protecting selected employees from layoff through job changes (Nos. 2, 5, 13). The communications are relevant to Rossiter's claims that he was disparately discriminated against on the basis of his age and that his selection for layoff was age-based, and not performance-based, as IBM claims. Accordingly, Rossiter requests that the Court order IBM to undertake a *diligent* search for documents that are responsive to these requests.

### Documents Not Produced

IBM has failed to produce *any* communication between Lefebvre and McGloin or between Monahan and McGloin concerning Rossiter, which is not credible given that Rossiter reported directly or indirectly to all three (Request No. 2). Rossiter continues to seek the job requisition forms for the positions identified in Request No. 6, including subpart (c), the job Jim Hasl was hiring for at the time of the layoff, and subpart (i), the un-posted position offered to Phil Bender. IBM has failed to produce *any* communications before the layoffs were announced, between Lefebvre and *any* IBM employee, including McNerney and Chang, about changing jobs, which is not credible given that both McNerney and Chang changed jobs near the time of the layoff, which terminated Rossiter. SOF, ¶¶ 1.21-1.28, 2.12. Also, IBM's response to Request No. 14 that it could not locate any of the staffing proposals that LeFebvre and/or McGloin made over a *2-year period* is

not credible, particularly within the context of budgetary constraints and eventual

downsizing.

## C. Requests Concerning the Lay-Off

While all of Rossiter's document requests are relevant to IBM's state of

mind at the time of the lay-off, three of the requests directly concern the lay-off.

### Request No. 5

Furnish all correspondence, including email, between and/or among Mark
Lefebvre, Director of Marketing IBM Microelectronics, and Patricia McGloin,
Manager of Integrated Marketing Communications IBM Microelectronics, and
any other IBM manager or Human Resources employee, which reference, discuss
or identify:

a) Dennis Rossiter;
b) IBM's efforts to downsize; right size or layoff; and/or
c) Specific qualifications company employees needed in order to escape
downsizing, or qualifications that the company believed it needed in the
short- and medium-range future.

### Response

IBM objects to this request on the grounds that it is vague, overbroad,
unduly burdensome and seeks documents which are neither relevant nor
reasonably calculated to lead to the discovery of admissible evidence. Subject to
and without waiving these objections, IBM refers Rossiter to the documents
produced in response to Document Request No. 2.

### Rossiter Letter of March 14, 2005

IBM's response to this request refers to IBM's response to Request No. 2.
The document production for Request No. 2 is incomplete.

### Response

See response to request 2.

Request No. 8

Any and all documents, which reference, identify or discuss IBM's decision to lay off Mr. Rossiter, including, but not limited to:

> a) Documents which identify the amount of money IBM needed to cut from its entire budget during the time Mr. Rossiter was laid off;
> b) business plans showing planned and actual cost reductions;
> c) Any analysis, report or memoranda discussing the skills, technical background or educational background needed by IBM employees to remain viable at IBM, whether or not those documents specifically reference Mr. Rossiter;
> d) Any and all documents that set forth IBM's layoff or downsizing policy or plan; and
> e) Any and all documents that set forth the policy, procedures and/or criteria to be used when implementing a layoff or downsizing.

Response

IBM objects to this request on the grounds that it is vague, overbroad, unduly burdensome and seeks documents which contain confidential business information and documents which are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, and subject to the plaintiff agreeing to a suitable confidentiality stipulation, IBM will also produce documents that reflect the numbers of employees targeted for layoff (in the layoff affecting Rossiter) and who worked for IBM in departments reporting to Mr. Lefebvre, to the extent that such documents can be located after a reasonable search. IBM also refers Rossiter to the documents produced in response to Document Requests No. 2, 4, and 9.

Rossiter Letter of March 14, 2005

Plaintiff seeks all documents pertaining to the layoff selection process as it Pertained to Plaintiff, including documents concerning targeted budgetary reductions, the implementation of cost reductions, and all documents, including e-mails, memoranda, and notes to file, concerning Plaintiff and the layoff, which pre-dated the final "Selection Worksheet."

Response

We produced the documents we were able to locate through a reasonable search, including the selection guidelines, the selection worksheets for your client and the comparators in the same skill group, various charts reflecting the lay-off

22

(including lay-off targets) in MD and Lefebvre's group, and an e-mail from Patricia McGloin to Maria Lipner and Mark Lefebvre about the lay-off target in MD Marketing.

## Request No. 12

Copies of all correspondence from any IBM manager of Human Resources employee pertaining to hiring outlook, hiring freezes, cost reductions, employee hiring and sourcing.

## Response

IBM objects to this request on the grounds that it is vague, overbroad, unduly burdensome and seeks documents which contain confidential business information and documents which are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, and subject to the plaintiff agreeing to a suitable confidentiality stipulation, IBM will produce general correspondence from Human Resources or IBM managers in the 2001 time period regarding the need for the Microelectronics Division or IBM generally to limit hiring or cut costs and that it is able to locate after a reasonable search. IBM also points out that the documents produced in response to Request No. 8 reflect that over 1500 employees were targeted for layoff in the resource action affecting Rossiter.

## Rossiter Letter of March 14, 2005

IBM has produced the OWBPA report only and has failed to produce the requested Human Resources documents which preceded the OWBPA.

## Response

Your letter is incorrect. We produced e-mails concerning expense control efforts.

## Argument

Rossiter incorporates by reference his arguments in Sections A and B concerning IBM's objections based on overbreadth, burdensomeness, and confidential information and its claim of inability to locate responsive documents. Rossiter seeks all communications between and/or among Lefebvre, McGloin,

Human Resources, and/or any other manager in the Microelectronics Marketing Division about hiring policy, downsizing, and/or skill sets to survive downsizing, which preceded the lay-off that affected Rossiter. These documents are relevant as baselines against which the actual decisions for lay-off and the criteria used may be compared. The Guidelines for the lay-off and the OWBRA document that IBM produced do not address the communications among decision-makers about the layoff, *prior* to the layoff, which are relevant to Rossiter's claim that his selection for layoff was based on his age, his managers' age-based stereotypes, and age animus.

## Documents Not Produced

In responding to Rossiter's 3/14/05 Letter concerning Request No. 5, IBM again referred Rossiter to its response to Request No. 2, which itself continues to be inadequate and non-responsive. Rossiter seeks all communications between and/or among McGloin, Lefebvre, any other IBM manager, and/or Human Resources personnel concerning Rossiter, the layoff, and/or the skills that the Division and/or IBM wanted in place at the end of the layoff. It is inconceivable, for example, that Lefebvre and McGloin did not communicate about the layoff, their employees, and/or the implementation of the layoff. With respect to Request No. 8, Rossiter seeks complete documentation of the Reduction In Force, including all documents concerning the amount of money that IBM needed to cut from the budget, the actual cost reductions made through the RIF, the mix of skills, human capital, and/or institutional experience IBM sought to retain, and the

relationship between these goals and policies and the selection "guidelines" that IBM produced. Also, IBM has failed to produce the worksheets for Rossiter's comparators; that is, for all employees in Lefebvre's Microelectronics Marketing Division. Rossiter knows that McGloin completed worksheets for only a few of the employees who reported to her. SOF, ¶¶ 1.33. In all likelihood, IBM's production of the worksheets for Rossiter's actual comparators will reveal that a skills assessment was performed for only some, and not all, employees in the Division. The requested documents are essential to Rossiter's claims that his termination was the result of age-discrimination, not performance, and that the RIF was not age-neutral. Finally, Rossiter continues to seek documents pertaining to the hiring outlook and hiring freezes during 2001, which are relevant to Lefebvre's hiring of the much younger, less qualified McNerney and Chang, assigning them Rossiter's job responsibilities, and then terminating Rossiter but retaining McNerney and Chang (Request No. 12).

## Conclusion

Rossiter signed a confidentiality agreement at IBM's request, to no avail; Rossiter sought document production informally, to no avail; Rossiter renewed his effort to obtain discoverable, relevant documents in the Parties' Status Report, and IBM rebuffed this effort: "IBM disputes the plaintiff's characterization below of IBM's responses to plaintiff's document requests... ." Parties Status Report, at 1. IBM's withholding of documents has already compromised Plaintiff's preparation

of his opposition to summary judgment, and any further withholding will onerously and unjustly place Rossiter at a disadvantage in preparing for the hearing on the summary judgment motion and in preparing for the trial of this action.   For these reasons, as well as the aforestated reasons, Rossiter requires and seeks the Court's assistance in obtaining all discoverable relevant documents. Accordingly, Rossiter respectfully requests that the Court grant his motion and compel IBM to promptly produce all responsive documents.

Respectfully submitted,


Dennis Rossiter
By his Attorneys,


Kevin G. Powers, BBO #405020
Linda Evans, BBO 635078
Rodgers, Powers & Schwartz LLP
18 Tremont Street
Boston, MA 02108
(617) 742-7010

MemoMotCompelDocProd

# EXHIBIT 1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| DENNIS ROSSITER | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | C.A. No. 04 CR 10069DPW |
| | ) | |
| INTERNATIONAL BUSINESS | ) | |
| MACHINES CORPORATION | ) | |
| Defendant | ) | |

**DEFENDANT INTERNATIONAL BUSINESS MACHINES CORPORATION'S
RESPONSE TO PLAINTIFF'S FIRST REQUEST
FOR PRODUCTION OF DOCUMENTS**

Pursuant to the Federal Rules of Civil Procedure 34, Defendant, International Business Machines ("IBM"), hereby responds to Plaintiff's First Request for Production of Documents as follows:

## GENERAL OBJECTIONS

1.     IBM objects to any request for the production of documents to the extent it purports to impose upon IBM any obligation beyond those imposed by the Federal Rules of Civil Procedure.

2.     IBM objects to any request for the production of documents which seeks information not relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence.

3.     IBM objects to any request for the production of documents which constitute or contain any information concerning communications between IBM and its counsel which are protected by the attorney-client privilege.

4.    IBM objects to the request for production of documents and other materials, which constitute trial preparation materials prepared in anticipation of trial or which are otherwise protected by the work-product doctrine or some other available privilege or protection.

5.    The inadvertent production by IBM of documents containing information protected from disclosure by the attorney/client privilege, work-product doctrine, or any other applicable privilege, shall not constitute a waiver by IBM of any such protection.

6.    IBM declines to produce responsive documents to the extent they have already been produced to plaintiff, either during the proceedings before the Massachusetts Commission Against Discrimination ("MCAD") or as part of IBM's automatic disclosures in this action.

7.    IBM objects to producing documents that reveal private or confidential information concerning IBM employees other than the plaintiff.

8.    IBM objects to producing more than once any document that is responsive to more than one request. Where a single document is responsive to multiple requests, it will be produced in response to the first request to which it applies.

9.    IBM objects to producing documents at the office of the plaintiff's counsel. IBM will produce the documents at a date, time and place mutually agreed upon by counsel for the parties.

10.    IBM objects to the definitions of "Defendant," and "IBM", "you," "your," and "yours" on the ground that such definitions are overbroad.

11.    IBM objects to the definition of "the relevant period" as being overbroad.

12.    IBM objects to the definition of "person" or "individual" as being vague, ambiguous and overbroad and beyond the scope of Local Rule 26.5(C)(6).

13.    IBM objects to the definitions of the term "concern" or "concerning" and the phrase "relating to" on the grounds that the definitions are over broad, unduly burdensome, vague and ambiguous and beyond the scope of Local Rule 26.5(C)(7).

14.    IBM objects to the definition of "document" and on the ground that such definition is overbroad and beyond the scope of Local Rule 26.5(C)(2).

15.    IBM objects to the definition of the word "communication" on the grounds that the definition is over broad, unduly burdensome, vague and ambiguous and beyond the scope of Local Rule 26.5(C)(1).

16.    To the extent that IBM agrees to produce documents requested in the Request, IBM in no way represents that it, in fact, has documents responsive to such Request, or that such Request is factually accurate.


IBM reserves the right to object to the admissibility in evidence of all or any part of the responses herein.  All responses are made subject to and without waiving the foregoing general objections.

Specifically incorporating each of the foregoing general objections and responses into each response below and without waiving said objections, IBM responds as follows.

### RESPONSE TO SPECIFIC REQUESTS

REQUEST NO. 1

IBM's Job Posting Policy in effect from January 2001 to the present.

RESPONSE NO. 1

IBM objects to this request on the grounds that the request is overbroad in time and seeks documents which are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, IBM will produce its policy on internal job postings that is dated for the year 2001 and that it is able to find after a reasonable search; if unable to locate same, IBM will produce a copy of its current policy on internal job postings. In connection with said production, IBM refers plaintiff to the documents that IBM has already produced in response to request number 1 of plaintiff's first request for production of documents while his case was at the MCAD.

REQUEST NO. 2

Provide the contents of any and all employment files concerning Mr. Rossiter, including but not limited to:

a)    All communications, email, so-called "desk files," meeting notes, and any and all other communications between Ms. Patricia McGloin, Manager Integrated Marketing Communications, Microelectronics Division, and Mr. Mark Lefebvre, Director Microelectronics Marketing, regarding Mr. Rossiter's skills assessment, performance, contribution and potential for future contribution and/or promotion;

b)    All communications, notes, "desk files," emails between James P. Monahan, Rossiter's former IBM Manager, and Monahan's successor, Patricia McGloin (Mr. Rossiter's direct manager) regarding any aspect of Mr. Rossiter's performance, skills, and potential for promotion; and

c)    All documents pertaining to Mr. Rossiter of any kind.

RESPONSE NO. 2

IBM objects to this request on the grounds that it is vague, overbroad, unduly burdensome and seeks documents which are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these

4

objections, and to the extent the following documents can be located after a reasonable search, IBM will produce (a) Rossiter's PBC's, (b) the "360" reports from other employees regarding Rossiter, (c) the skills assessment of Rossiter that was completed before his selection for layoff, and (d) non-privileged communications regarding Rossiter's selection for layoff. In connection with said production, IBM refers plaintiff to the documents that IBM has already produced in response to request number 2 of plaintiff's first request for production of documents while his case was at the MCAD.

REQUEST NO. 3

Provide salary plans, including compensation increases, cash awards and performance ratings, and date of birth for all Technology Group and Microelectronics Group marketing personnel from January 1997 to present.

RESPONSE NO. 3

IBM objects to this request on the grounds that it is vague, overbroad, unduly burdensome and seeks documents which are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. IBM also objects to producing documents that would violate the privacy of another employee or would provide confidential information concerning another employee. Subject to and without waiving these objections, upon plaintiff's execution of a suitable confidentiality stipulation, IBM will produce documents that reflect the performance ratings (PBC's) of employees who worked under Patricia McGloin at the time of the layoff affecting the plaintiff, and who were the comparators for the plaintiff in the layoff (i.e., the Band 9, non-managerial employees), and the ages of each such employee.

REQUEST NO. 4

Provide all written policies, handbooks, practices, memoranda, training and processes in effect for implementing IBM's layoffs during calendar years 2001 and 2002.

RESPONSE NO. 4

IBM objects to this request on the grounds that it is vague, overbroad, unduly burdensome and seeks documents which are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. IBM also objects to producing documents that reflect confidential business information. Subject to and without waiving these objections, upon plaintiff's execution of a suitable confidentiality stipulation, IBM will produce a document that sets forth IBM's guidelines for the layoff that affected the plaintiff.

REQUEST NO. 5

Furnish all correspondence, including email, between and/or among Mark Lefebvre, Director of Marketing IBM Microelectronics, and Patricia McGloin, Manager of Integrated Marketing Communications IBM Microelectronics, and any other IBM manager or Human Resources employee, which reference, discuss or identify:

a)   Dennis Rossiter;
b)   IBM's efforts to downsize; right size or layoff; and/or
c)   Specific qualifications company employees needed in order to escape downsizing, or qualifications that the company believed it needed in the short- and medium-range future.

RESPONSE NO. 5

IBM objects to this request on the grounds that it is vague, overbroad, unduly burdensome and seeks documents which are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, IBM refers Rossiter to the documents produced in response to Document Request No. 2.

REQUEST NO. 6

Provide copies of the Job Requisition forms for the following IBM jobs:

a)    All Corporate, Technology Group and/or Microelectronics Division Marketing Communications jobs that were filled between January 1998 and June 2002, including, but not limited to:
b)    Director, Integrated Marketing Communications Technology Group;
c)    Corporate Events Operations Manager (James Hasl's Group);
d)    Technology Group Events Manager;
e)    Microelectronics Collateral Manager;
f)    PowerPC Marketing Communications Manager and/or Programs Manager
g)    Microelectronics and/or Technology Group Brand Marketing & Corporate Programs Manager; and
h)    Interactive Marketing Manager; and
i)    Microelectronics Division/Server Group Marketing Services Manager.

## RESPONSE NO. 6

IBM objects to this request on the grounds that it is vague, overbroad, unduly burdensome and seeks documents which are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, IBM will produce Job Post reports for the only two positions that Rossiter applied for during the year before his layoff: Program Manager, Web Events and Integrated Marketing Communications Leader. In connection with said production, IBM refers plaintiff to the documents that IBM has already produced in response to request number 6 of plaintiff's first request for production of documents while his case was at the MCAD. IBM notes that one of these positions – the position of Integrated Marketing Communications Leader – was withdrawn and never filled. The other position was filled in April, but eliminated in late June.

## REQUEST NO. 7

All resumes and any other document which identify the educational background, work background, birth dates, job titles, and job codes of the IBM employees who work or worked to support IBM Technology Group Marketing and/or IBM Microelectronics Marketing, between January 1998 and January 2002, including the following employees:

a)    Karen J. Smith, IMC Strategist/Server Group;
b)    Carol McNerney, Brand Marketing & Corporate Programs;

c)   Cynthia Puttlitz, IMC Manager PowerPC;
d)   Ray Chang, Program Manager/Naming;
e)   Marge Oppold, Manager/Event Marketing;
f)   Phillip Bender, Manager of Marketing Services/Microelectronics Server Group;
g)   Ed Abrams, Director Integrated Marketing Communications IBM Technology Group; and
h)   Rob Rohrer, Interactive Marketing Manager

## RESPONSE NO. 7

IBM objects to this request on the grounds that it is vague, overbroad, unduly burdensome and seeks documents which are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. IBM also objects to producing documents that would violate the privacy of another employee or would provide confidential information concerning another employee. Subject to and without waiving these objections, upon plaintiff's execution of a suitable confidentiality stipulation, IBM will produce resumes of those other employees who worked under Patricia McGloin at the time of the layoff affecting the plaintiff, and who were the comparators for the plaintiff in the layoff (i.e., the Band 9, non-managerial employees), to the extent that such documents can be located after a reasonable search.

## REQUEST NO. 8

Any and all documents, which reference, identify or discuss IBM's decision to lay off Mr. Rossiter, including, but not limited to:

a)   Documents which identify the amount of money IBM needed to cut from its entire budget during the time Mr. Rossiter was laid off;
b)   business plans showing planned and actual cost reductions;
c)   Any analysis, report or memoranda discussing the skills, technical background or educational background needed by IBM employees to remain viable at IBM, whether or not those documents specifically reference Mr. Rossiter;
d)   Any and all documents that set forth IBM's layoff or downsizing policy or plan; and

    e)      Any and all documents that set forth the policy, procedures and/or criteria to be used when implementing a layoff or downsizing.

RESPONSE NO. 8

IBM objects to this request on the grounds that it is vague, overbroad, unduly burdensome and seeks documents which contain confidential business information and documents which are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, and subject to the plaintiff agreeing to a suitable confidentiality stipulation, IBM will also produce documents that reflect the numbers of employees targeted for layoff (in the layoff affecting Rossiter) and who worked for IBM in departments reporting to Mr. Lefebvre, to the extent that such documents can be located after a reasonable search. IBM also refers Rossiter to the documents produced in response to Document Requests No. 2, 4, and 9.

REQUEST NO. 9

All documents which reference, identify or discuss IBM's position set forth in its letter from Michel Mayer, General Manager IBM Microelectronics Division, to Mr. Rossiter that there was a requirement for "skills rebalancing" necessary to reduce costs, including:

    a)      Memos, meeting notes, and/or emails between and/or among Patricia McGloin, Mark Lefebvre, IBM Human Resources, and any other IBM employee which discuss the need for employees with certain skills and how skills would be "balanced;"

    b)      Copies of all resumes of IBM employees in Microelectronics Marketing and/or Technology Group Marketing that show evidence of required skills; and

    c)      Copies of skills assessment worksheets pertaining to Mr. Rossiter and all other IBM Microelectronics and IBM Technology Group Marketing employees.

RESPONSE NO. 9

IBM objects to this request on the grounds that it is vague, overbroad, unduly burdensome and seeks documents which contain confidential business information and

documents which are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, and subject to the plaintiff agreeing to a suitable confidentiality stipulation, IBM will produce documents that reflect the numbers of employees targeted for layoff (in the layoff affecting plaintiff) and who worked for IBM in departments reporting to Mr. Lefebvre, to the extent that such documents can be located after a reasonable search. IBM also refers plaintiff to the documents produced in response to Document Requests No. 2 and 9.

REQUEST NO. 10

Copies of organizational charts created or issued by Patricia McGloin, Mark Lefebvre or anyone else for the Technology Group and Microelectronic Division's Marketing Communications department.

RESPONSE NO.10

IBM objects to this request on the grounds that it is vague, overbroad and seeks documents which are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, IBM will produce organizational charts for the Integrated Marketing Communications organization for 2000 through 2002 and that it is able to locate after a reasonable search. In connection with said production, IBM refers plaintiff to the documents that IBM has already produced in response to request number 10 of plaintiff's first request for production of documents while his case was at the MCAD.

REQUEST NO. 11

Copies of all age discrimination complaints filed internally or at any agency or court against IBM from January 1998 to the present, along with any notes, memoranda or other correspondence, which indicates the title of complainants and the department from which they were laid off and/or the department in which they incurred an adverse employment action.

RESPONSE NO. 11

IBM objects to this request on the grounds that it is vague, overbroad, unduly burdensome and seeks documents which are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. IBM also objects to producing documents that would violate the privacy of another employee or would provide confidential information about another employee. Subject to and without waiving these objections, IBM states that there are no such documents challenging any employment decisions by the managers who participated in the decision to select Rossiter for layoff.

REQUEST NO. 12

Copies of all correspondence from any IBM manager of Human Resources employee pertaining to hiring outlook, hiring freezes, cost reductions, employee hiring and sourcing.

RESPONSE NO.12

IBM objects to this request on the grounds that it is vague, overbroad, unduly burdensome and seeks documents which contain confidential business information and documents which are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, and subject to the plaintiff agreeing to a suitable confidentiality stipulation, IBM will produce general correspondence from Human Resources or IBM managers in the 2001 time period regarding the need for the Microelectronics Division or IBM generally to limit hiring or cut costs and that it is able to locate after a reasonable search. IBM also points out that the documents produced in response to Request No. 8 reflect that over 1500 employees were targeted for layoff in the resource action affecting Rossiter.

REQUEST NO. 13

Copies of all communications, meeting notes, email, memos from Mark Lefebvre to James Gianotti; Mark Lefebvre to Wendy Arnette; and Mark Lefebvre to any other IBM employee regarding continuing employment at IBM, specifically any communication relative to changing jobs before the layoffs were announced.

RESPONSE NO. 13

IBM objects to this request on the grounds that it is vague, overbroad, unduly burdensome and seeks documents which are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. IBM also objects to producing documents that would violate the privacy of another employee or would provide confidential information about another employee. IBM points out that James Gianotti and Wendy Arnette were not comparators to Rossiter in the layoff and their employment at IBM was unrelated to the decision to lay off Rossiter.

REQUEST NO. 14

Copies of all business plans, presentations, or meeting notes created by Mark Lefebvre and/or Patricia McGloin pertaining to staffing proposals between January 2000 and January 2002.

RESPONSE NO. 14

IBM objects to this request on the grounds that it is vague, overbroad, unduly burdensome and seeks documents which contain confidential business information and documents which are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, IBM refers Rossiter to the organizational charts produced in response to Request No. 10, which reflect staffing.

REQUEST NO. 15

Any and all documents upon which IBM relies to support their contention that the following employees were the most qualified candidates for their respective positions including but not limited to their personnel files:

a)  Karen J. Smith, Integrated Marketing Communications Strategist;
b)  Ray Chang, Naming Programs;
c)  Carol McNerney, Brand Marketing & Corporate Programs;
d)  Marge Oppold, Events Marketing;
e)  Edward Abrams, Director Integrated Marketing Communications; and
f)  Patricia McGloin, Manager Integrated Marketing Communications.

RESPONSE NO. 15

IBM objects to this request on the grounds that it is vague, overbroad, unduly burdensome and seeks documents which are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Moreover, the request assumes that IBM "contends" that the above-named individuals "were the most qualified candidates for their respective positions," which is a "contention" that assumes facts that have no bearing on this case. IBM points out that none of the above-named individuals were comparators to Rossiter in the layoff process and Rossiter did not compete with any of these individuals for positions at IBM. IBM also objects to producing documents that would violate the privacy of another employee or would provide confidential information concerning another employee.

REQUEST NO. 16

Any and all documents upon which IBM relies on to support their contention that Mr. Rossiter was not a qualified candidate or the most qualified candidate for any of the positions listed in Document Request No. 15.

RESPONSE NO. 16

IBM objects to this request on the grounds that it is vague, overbroad, unduly

burdensome and seeks documents which are neither relevant nor reasonably calculated to

lead to the discovery of admissible evidence. Moreover, the request assumes that IBM

"contends" that Rossiter was "not a qualified candidate or the most qualified candidate

for any of the positions listed" above, which is a "contention" that makes no sense since

Rossiter did not apply for or compete for the positions listed in Request No. 15.

REQUEST NO. 17

Documentation of skill groups identified by Ms. Patricia McGloin which included
an assessment of numerous employees and how the skills of those employees matched
the skills needed by IBM.

RESPONSE NO. 17

IBM objects to this request on the grounds that it is vague, overbroad, unduly

burdensome and seeks documents which are neither relevant nor reasonably calculated to

lead to the discovery of admissible evidence. IBM also objects to producing documents

that would violate the privacy of another employee or would provide confidential

information concerning another employee. Subject to and without waiving these

objections, IBM refers Rossiter to the documents to be produced in response to Request

No. 9, subject to Rossiter entering into a suitable confidentiality stipulation.

INTERNATIONAL BUSINESS
MACHINES CORPORATION

By its Attorneys,

PRINCE, LOBEL GLOVSKY & TYE LLP

Daniel S. Tarlow, BBO #552920
Laurie F. Rubin, BBO #564947
585 Commercial Street
Boston, MA  02109
(617) 456-8000

Dated:  July 23, 2004

## CERTIFICATE OF SERVICE

I hereby cert'              ue copy of
the above                      upon the
attorney                          P.
party by ma

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of
the above document was served upon the
attorney(s) of record for each other
party by mail on___July 23, 2004___

# EXHIBIT 2

RODGERS, POWERS & SCHWARTZ LLP

18 Tremont Street     | *A T T O R N E Y S   A T   L A W*
Boston, MA 02108      |
Tel. (617) 742-7010   |
Fax (617) 742-7225    |

Kevin G. Powers
Email  KGPowers@TheEmploymentLawyers.com

March 14, 2005

Daniel S. Tarlow, Esq.
Prince Lobel Glovsky & Tye LLP
585 Commercial Street
Boston, MA 02109-1024

Re:   <u>Dennis Rossiter v. International Business Machines Corporation</u>
      C.A. No. 04-10069- DPW

Dear Dan:

We have again reviewed IBM's production of documents, in light of the fact
that the parties signed a Stipulated Confidentiality and Nondisclosure Order on
December 15, 2004.  IBM had previously indicated in its responses to document
requests that it would withhold certain responsive documents until such Stipulation
was agreed upon.  Also, in some responses, IBM referred to producing "non-
privileged communications," but did not provide a privilege log.

       Please review the following requests with your client and provide us with all
of the responsive documents which were withheld, contingent upon a signed
confidentiality agreement, and/or provide us with a privilege log for any privileged
documents that are being withheld:

<u>Request No. 2:</u>     IBM has not produced LeFebvre's or Monahan's
communications with Patricia McGloin.

<u>Request No. 3:</u>     IBM has failed to produce documents responsive to this
request; that is, the performance evaluations and other requested documents

Harvey A. Schwartz, P.C.
Kevin G. Powers
Elizabeth A. Rodgers
Jonathan J. Margolis
Robert S. Mantell
Linda Evans
Laurie A. Frankl

RODGERS, POWERS & SCHWARTZ

concerning all Technology Group and Microelectronics Group marketing personnel from January 1997 to the present. The requested documents include, but are not limited to, the comparator evaluations, e.g., ratings on selection criteria, for layoff of the employees who worked under Patricia McGloin at the time of Plaintiff's layoff.

Request No. 5:      IBM's response to this request refers to IBM's response to Request No. 2. The document production for Request No. 2 is incomplete.

Request No. 6:      IBM's response to the request is not responsive; that is, Plaintiff has requested the Job Requisition forms for ten categories of positions, not merely the positions of Integrated Marketing Communications Leader and Program Manager, Web Events.

Request No. 7:      Again, IBM attempts to impermissibly limit Plaintiff's request. Plaintiff seeks all documents responsive to this request concerning the eight (8) identified employees.

Request No. 8:      Plaintiff seeks all documents pertaining to the layoff selection process as it pertained to Plaintiff, including documents concerning targeted budgetary reductions, the implementation of cost reductions, and all documents, including e-mails, memoranda, and notes to file, concerning Plaintiff and the layoff, which pre-dated the final "Selection Worksheet."

Request No. 9:      IBM has failed to produce documents which are responsive to this request and impermissibly seeks to restate and narrow Plaintiff's request.

Request No. 10:      Plaintiff requests all organizational charts created or issued by Patricia McGloin, Mark Lefebvre or anyone else for the Technology Group and Microelectronic Division's Marketing Communications department for 2000 and 2001.

Request No. 12:      IBM has produced the OWBPA report only and has failed to produce the requested Human Resources documents which preceded the OWBPA report.

Request No. 13:      IBM has failed to produce any documents responsive to the

RODGERS, POWERS & SCHWARTZ

request and impermissibly and evasively seeks to redefine the scope of the request. The request addresses differential policies and practices at IBM, not narrowly-defined comparators to Plaintiff.

Request No. 14:    IBM's response to this request is not responsive.  Plaintiff seeks all documents created by Mark Lefebvre and/or Patricia McGloin pertaining to staffing proposals between January 2000 and January 2002.

Request No. 15:    IBM's response to the request is not responsive.  Plaintiff seeks the resumes of the six (6) individuals identified in the request.

Request No. 17:    IBM refers to its response to Request No. 9, for which the Defendant has only produced "IBM Marketing Professional Career Skills List By Job Level Integrated Marketing Communications Discipline," dated May 2001, which does not adequately address either Request No. 9 or Request No. 17.

After you have consulted with you client, please let me know when Plaintiff will receive all of the responsive documents which were withheld prior to the confidentiality agreement.  Again, if IBM continues to contend that any requested documents are privileged, please provide a privilege log.

If you have any questions, please call me.

Sincerely yours,

Kevin G. Poweres

TarlowLtrDocs3.14.05

# EXHIBIT 3

DANIEL S. TARLOW
dstarlow@plgt.com
(617) 456.8013 Tel

Prince Lobel Glovsky & Tye LLP
Attorneys at Law

585 Commercial Street
Boston, MA 02109-1024
(617) 456.8000 Tel
(617) 456.8100 Fax
www.plgt.com

**Via Facsimile (617-742-7225)
& First Class Mail**

April 4, 2005

Kevin G. Powers, Esq.
Rodgers, Powers & Schwartz LLP
18 Tremont Street
Boston, MA  02108

Re:   <u>Dennis Rossiter v. International Business Machines Corporation</u>

Dear Kevin:

This letter is in response to your letter of March 14, 2005 wherein you raise certain issues with respect to IBM's document production.  This letter will set forth the document request, the response to the document request, the issues raised in your letter and our response to the issues you raise.

### REQUEST NO. 2

*Provide the contents of any and all employment files concerning Mr. Rossiter, including but not limited to:*

    *a)*    *All communications, email, so-called "desk files," meeting notes, and any and all other communications between Ms. Patricia McGloin, Manager Integrated Marketing Communications, Microelectronics Division, and Mr. Mark Lefebvre, Director Microelectronics Marketing, regarding Mr. Rossiter's skills assessment, performance, contribution and potential for future contribution and/or promotion;*

    *b)*    *All communications, notes, "desk files," emails between James P. Monahan, Rossiter's former IBM Manager, and Monahan's successor, Patricia McGloin (Mr. Rossiter's direct manager) regarding any aspect of Mr. Rossiter's performance, skills, and potential for promotion; and*

    *c)*    *All documents pertaining to Mr. Rossiter of any kind.*

### RESPONSE NO. 2

*IBM objects to this request on the grounds that it is vague, overbroad, unduly burdensome and seeks documents which are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving these objections, and*

PRINCE . LOBEL . GLOVSKY & TYE ⁵

Kevin G. Powers, Esq.
Page 2 of 12
April 4, 2005

to the extent the following documents can be located after a reasonable search, IBM will produce (a) Rossiter's PBC's, (b) the "360" reports from other employees regarding Rossiter, (c) the skills assessment of Rossiter that was completed before his selection for layoff, and (d) non-privileged communications regarding Rossiter's selection for layoff. In connection with said production, IBM refers plaintiff to the documents that IBM has already produced in response to request number 2 of plaintiff's first request for production of documents while his case was at the MCAD.

Plaintiff's letter of 3/14/05

IBM has not produced Lefebvre's or Monahan's communications with McGloin.

IBM Response to letter of 3/14/05:

We produced the documents we were able to locate through a reasonable search.

REQUEST NO. 3

Provide salary plans, including compensation increases, cash awards and performance ratings, and date of birth for all Technology Group and Microelectronics Group marketing personnel from January 1997 to present.

RESPONSE NO. 3

IBM objects to this request on the grounds that it is vague, overbroad, unduly burdensome and seeks documents which are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. IBM also objects to producing documents that would violate the privacy of another employee or would provide confidential information concerning another employee. Subject to and without waiving these objections, upon plaintiff's execution of a suitable confidentiality stipulation, IBM will produce documents that reflect the performance ratings (PBC's) of employees who worked under Patricia McGloin at the time of the layoff affecting the plaintiff, and who were the comparators for the plaintiff in the layoff (i.e., the Band 9, non-managerial employees), and the ages of each such employee.

Plaintiff's letter of 3/14/05

IBM has failed to produce documents responsive to this request; that is, the performance evaluations and other requested documents concerning all Technology Group and Microelectronics Group marketing personnel from January 1997 to the present. The requested documents include, but are not limited, to the comparator evaluations, e.g., ratings on selection criteria, for layoff of the employees who worked under Patricia McGloin at the time of Plaintiff's layoff.

IBM Response to letter of 3/14/05:

In our December 16, 2004 production, we produced the information specified in your letter for the relevant group of comparators: Ronald Milos, Kathy Weaver, Karen Spilke, and

PRINCE . LOBEL . GLOVSKY & TYE ≅

Kevin G. Powers, Esq.
Page 3 of 12
April 4, 2005

Deborah Guynn. These are the other skill group members to whom Mr. Rossiter's was compared for purposes of the lay-off selection decision. For this group we produced the comparator selection worksheets, as well as the performance ratings for the years 1998-2001. We also produced the dates of birth of all the employees in Pat McGloin's group.

## REQUEST NO. 5

Furnish all correspondence, including email, between and/or among Mark Lefebvre, Director of Marketing IBM Microelectronics, and Patricia McGloin, Manager of Integrated Marketing Communications IBM Microelectronics, and any other IBM manager or Human Resources employee, which reference, discuss or identify:

a)    Dennis Rossiter;

b)    IBM's efforts to downsize; right size or layoff; and/or

c)    Specific qualifications company employees needed in order to escape downsizing, or qualifications that the company believed it needed in the short- and medium-range future.

## RESPONSE NO. 5

IBM objects to this request on the grounds that it is vague, overbroad, unduly burdensome and seeks documents which are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, IBM refers Rossiter to the documents produced in response to Document Request No. 2.

### Plaintiff's letter of 3/14/05

IBM's response to this request refers to IBM's response to Request No. 2. The document production for Request No. 2 is incomplete.

### IBM Response to letter of 3/14/05:

See response to request 2.

## REQUEST NO. 6

Provide copies of the Job Requisition forms for the following IBM jobs:

a)    All Corporate, Technology Group and/or Microelectronics Division Marketing Communications jobs that were filled between January 1998 and June 2002, including, but not limited to:

b)    Director, Integrated Marketing Communications Technology Group;

c)    Corporate Events Operations Manager (James Hasl's Group);

PRINCE·LOBEL·GLOVSKY & TYE ᴱ

Kevin G. Powers, Esq.
Page 4 of 12
April 4, 2005

    d)     *Technology Group Events Manager;*

    e)     *Microelectronics Collateral Manager;*

    f)     *PowerPC Marketing Communications Manager and/or Programs Manager*

    g)     *Microelectronics and/or Technology Group Brand Marketing & Corporate Programs Manager; and*

    h)     *Interactive Marketing Manager; and*

    i)     *Microelectronics Division/Server Group Marketing Services Manager.*

### RESPONSE NO. 6

*IBM objects to this request on the grounds that it is vague, overbroad, unduly burdensome and seeks documents which are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, IBM will produce Job Post reports for the only two positions that Rossiter applied for during the year before his layoff: Program Manager, Web Events and Integrated Marketing Communications Leader. In connection with said production, IBM refers plaintiff to the documents that IBM has already produced in response to request number 6 of plaintiff's first request for production of documents while his case was at the MCAD. IBM notes that one of these positions – the position of Integrated Marketing Communications Leader – was withdrawn and never filled. The other position was filled in April, but eliminated in late June.*

#### Plaintiff's letter of 3/14/05

IBM's response to the request is not responsive; that is, Plaintiff has requested the Job Requisition forms for ten categories of positions, not merely the positions of Integrated Marketing Communications Leader and Program Manager, Web Events.

#### IBM Response to letter of 3/14/05:

Without waiving the objections, we will do a reasonable search for the "job requisitions," if any exist, for the positions listed in subparts b), d), e), f), g), and h). Subpart a) is overbroad, unduly burdensome and seeks irrelevant information. Subpart c) relates to the job Jim Hasl was apparently hiring for at the time of the lay-off. According to your client's testimony, he has no complaint about not getting this job. Subpart i) relates to Phil Bender. As per your client's testimony, he didn't want the job Bender got. He initially feared Bender would

PRINCE, LOBEL, GLOVSKY & TYE

Kevin G. Powers, Esq.
Page 5 of 12
April 4, 2005

"co-opt" him but in the end everything worked out.  Your client's testimony has stripped these

jobs of any possible relevance.

*REQUEST NO. 7*

All resumes and any other document which identify the educational background, work background, birth dates, job titles, and job codes of the IBM employees who work or worked to support IBM Technology Group Marketing and/or IBM Microelectronics Marketing, between January 1998 and January 2002, including the following employees:

     a)     *Karen J. Smith, IMC Strategist/Server Group;*

     b)     *Carol McNerney, Brand Marketing & Corporate Programs;*

     c)     *Cynthia Puttlitz, IMC Manager PowerPC;*

     d)     *Ray Chang, Program Manager/Naming;*

     e)     *Marge Oppold, Manager/Event Marketing;*

     f)     *Phillip Bender, Manager of Marketing Services/Microelectronics Server Group;*

     g)     *Ed Abrams, Director Integrated Marketing Communications IBM Technology Group; and*

     h)     *Rob Rohrer, Interactive Marketing Manager*

*RESPONSE NO. 7*

IBM objects to this request on the grounds that it is vague, overbroad, unduly burdensome and seeks documents which are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.  IBM also objects to producing documents that would violate the privacy of another employee or would provide confidential information concerning another employee.  Subject to and without waiving these objections, upon plaintiff's execution of a suitable confidentiality stipulation, IBM will produce resumes of those other employees who worked under Patricia McGloin at the time of the layoff affecting the plaintiff, and who were the comparators for the plaintiff in the layoff (i.e., the Band 9, non-managerial employees), to the extent that such documents can be located after a reasonable search.

Plaintiff's letter of 3/14/05

Again, IBM attempts to impermissibly limit Plaintiff's request.  Plaintiff seeks all documents responsive to this request concerning the eight (8) identified employees.

PRINCE . LOBEL . GLOVSKY & TYE ⊑

Kevin G. Powers, Esq.
Page 6 of 12
April 4, 2005

IBM Response to letter of 3/14/05:

Without waiving the objections, we will agree to produce resumes (if any exist and can be located through a reasonable search), work detail history reports and dates of birth for the people listed in the request except for Phil Bender for the reasons stated above.

REQUEST NO. 8

Any and all documents, which reference, identify or discuss IBM's decision to lay off Mr. Rossiter, including, but not limited to:

a) Documents which identify the amount of money IBM needed to cut from its entire budget during the time Mr. Rossiter was laid off;

b) Business plans showing planned and actual cost reductions;

c) Any analysis, report or memoranda discussing the skills, technical background or educational background needed by IBM employees to remain viable at IBM, whether or not those documents specifically reference Mr. Rossiter;

d) Any and all documents that set forth IBM's layoff or downsizing policy or plan; and

e) Any and all documents that set forth the policy, procedures and/or criteria to be used when implementing a layoff or downsizing.

RESPONSE NO. 8

IBM objects to this request on the grounds that it is vague, overbroad, unduly burdensome and seeks documents which contain confidential business information and documents which are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, and subject to the plaintiff agreeing to a suitable confidentiality stipulation, IBM will also produce documents that reflect the numbers of employees targeted for layoff (in the layoff affecting Rossiter) and who worked for IBM in departments reporting to Mr. Lefebvre, to the extent that such documents can be located after a reasonable search. IBM also refers Rossiter to the documents produced in response to Document Requests No. 2, 4, and 9.

Plaintiff's letter of 3/14/05

Plaintiff seeks all documents pertaining to the layoff selection process as it pertained to Plaintiff, including documents concerning targeted budgetary reductions, the implementation of cost reductions, and all documents, including e-mails, memoranda, and notes to file, concerning Plaintiff and the layoff, which pre-dated the final "Selection Worksheet."

🐝 PRINCE . LOBEL . GLOVSKY & TYE ⸗

Kevin G. Powers, Esq.
Page 7 of 12
April 4, 2005

IBM Response to letter of 3/14/05:

We produced the documents we were able to locate through a reasonable search, including the selection guidelines, the selection worksheets for your client and the comparators in the same skill group, various charts reflecting the lay-off (including lay-off targets) in MD and Lefebvre's group, and an e-mail from Patricia McGloin to Maria Lipner and Mark Lefebvre about the lay-off target in MD Marketing.

REQUEST NO. 9

All documents which reference, identify or discuss IBM's position set forth in its letter from Michel Mayer, General Manager IBM Microelectronics Division, to Mr. Rossiter that there was a requirement for "skills rebalancing" necessary to reduce costs, including:

a) Memos, meeting notes, and/or emails between and/or among Patricia McGloin, Mark Lefebvre, IBM Human Resources, and any other IBM employee which discuss the need for employees with certain skills and how skills would be "balanced;"

b) Copies of all resumes of IBM employees in Microelectronics Marketing and/or Technology Group Marketing that show evidence of required skills; and

c) Copies of skills assessment worksheets pertaining to Mr. Rossiter and all other IBM Microelectronics and IBM Technology Group Marketing employees.

RESPONSE NO. 9

IBM objects to this request on the grounds that it is vague, overbroad, unduly burdensome and seeks documents which contain confidential business information and documents which are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, and subject to the plaintiff agreeing to a suitable confidentiality stipulation, IBM will produce documents that reflect the numbers of employees targeted for layoff (in the layoff affecting plaintiff) and who worked for IBM in departments reporting to Mr. Lefebvre, to the extent that such documents can be located after a reasonable search. IBM also refers plaintiff to the documents produced in response to Document Requests No. 2 and 9.

Plaintiff's letter of 3/14/05

IBM has failed to produce documents which are responsive to this request and impermissibly seeks to restate and narrow Plaintiff's request.

🐧 PRINCE . LOBEL . GLOVSKY & TYE ≌

Kevin G. Powers, Esq.
Page 8 of 12
April 4, 2005

IBM Response to letter of 3/14/05:

We produced the documents we were able to locate through a reasonable search, including the selection guidelines which set forth the methodology of skill group analysis, selection work sheets for the skill group members to which Mr. Rossiter was compared, and the resumes we could locate for those skill group members. We also produced the Age and Title information (OWBPA Report) for the MERA.

REQUEST NO. 10

Copies of organizational charts created or issued by Patricia McGloin, Mark Lefebvre or anyone else for the Technology Group and Microelectronic Division's Marketing Communications department.

RESPONSE NO. 10

IBM objects to this request on the grounds that it is vague, overbroad and seeks documents which are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, IBM will produce organizational charts for the Integrated Marketing Communications organization for 2000 through 2002 and that it is able to locate after a reasonable search. In connection with said production, IBM refers plaintiff to the documents that IBM has already produced in response to request number 10 of plaintiff's first request for production of documents while his case was at the MCAD.

Plaintiff's letter of 3/14/05

Plaintiff requests all organizational charts created or issued by Patricia McGloin, Mark Lefebvre or anyone else of the Technology Group and Microelectronic Division's Marketing Communications department for 2000 and 2001.

IBM Response to letter of 3/14/05:

Without waiving the objections, we will supplement our response with additional organization charts.

REQUEST NO. 12

Copies of all correspondence from any IBM manager of Human Resources employee pertaining to hiring outlook, hiring freezes, cost reductions, employee hiring and sourcing.

PRINCE.LOBEL.GLOVSKY & TYE ▤

Kevin G. Powers, Esq.
Page 9 of 12
April 4, 2005

### RESPONSE NO. 12

IBM objects to this request on the grounds that it is vague, overbroad, unduly burdensome and seeks documents which contain confidential business information and documents which are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, and subject to the plaintiff agreeing to a suitable confidentiality stipulation, IBM will produce general correspondence from Human Resources or IBM managers in the 2001 time period regarding the need for the Microelectronics Division or IBM generally to limit hiring or cut costs and that it is able to locate after a reasonable search. IBM also points out that the documents produced in response to Request No. 8 reflect that over 1500 employees were targeted for layoff in the resource action affecting Rossiter.

#### Plaintiff's letter of 3/14/05

IBM has produced the OWBPA report only and has failed to produce the requested Human Resources documents which preceded the OWBPA report.

#### IBM Response to letter of 3/14/05:

Your letter is incorrect. We produced e-mails concerning expense control efforts.

### REQUEST NO. 13

Copies of all communications, meeting notes, email, memos from Mark Lefebvre to James Gianotti; Mark Lefebvre to Wendy Arnette; and Mark Lefebvre to any other IBM employee regarding continuing employment at IBM, specifically any communication relative to changing jobs before the layoffs were announced.

### RESPONSE NO. 13

IBM objects to this request on the grounds that it is vague, overbroad, unduly burdensome and seeks documents which are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. IBM also objects to producing documents that would violate the privacy of another employee or would provide confidential information about another employee. IBM points out that James Gianotti and Wendy Arnette were not comparators to Rossiter in the layoff and their employment at IBM was unrelated to the decision to lay off Rossiter.

#### Plaintiff's letter of 3/14/05

IBM has failed to produce any documents responsive to the request and impermissibly and evasively seeks to redefine the scope of the request. The request addresses differential policies and practices at IBM, not narrowly-defined comparators to Plaintiff.

PRINCE . LOBEL . GLOVSKY & TYE ⊞

Kevin G. Powers, Esq.
Page 10 of 12
April 4, 2005

### IBM Response to letter of 3/14/05:

We were unable to locate any responsive documents through a reasonable search.

### REQUEST NO. 14

Copies of all business plans, presentations, or meeting notes created by Mark Lefebvre and/or Patricia McGloin pertaining to staffing proposals between January 2000 and January 2002.

### RESPONSE NO. 14

IBM objects to this request on the grounds that it is vague, overbroad, unduly burdensome and seeks documents which contain confidential business information and documents which are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, IBM refers Rossiter to the organizational charts produced in response to Request No. 10, which reflect staffing.

### Plaintiff's letter of 3/14/05

IBM's response to this request is not responsive. Plaintiff seeks all documents created by Mark Lefebvre and/or Patricia McGloin pertaining to staffing proposals between January 2000 and January 2002.

### IBM Response to letter of 3/14/05:

We were unable to locate any responsive documents through a reasonable search.

### REQUEST NO. 15

Any and all documents upon which IBM relies to support their contention that the following employees were the most qualified candidates for their respective positions including but not limited to their personnel files:

a)      Karen J. Smith, Integrated Marketing Communications Strategist;

b)      Ray Chang, Naming Programs;

c)      Carol McNerney, Brand Marketing & Corporate Programs;

d)      Marge Oppold, Events Marketing;

e)      Edward Abrams, Director Integrated Marketing Communications; and

f)      Patricia McGloin, Manager Integrated Marketing Communications.

PRINCE . LOBEL . GLOVSKY & TYE ⅛

Kevin G. Powers, Esq.
Page 11 of 12
April 4, 2005

### RESPONSE NO. 15

IBM objects to this request on the grounds that it is vague, overbroad, unduly burdensome and seeks documents which are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Moreover, the request assumes that IBM "contends" that the above-named individuals "were the most qualified candidates for their respective positions," which is a "contention" that assumes facts that have no bearing on this case. IBM points out that none of the above-named individuals were comparators to Rossiter in the layoff process and Rossiter did not compete with any of these individuals for positions at IBM. IBM also objects to producing documents that would violate the privacy of another employee or would provide confidential information concerning another employee.

#### Plaintiff's letter of 3/14/05

IBM's response to the request is not responsive. Plaintiff seeks the resumes of the six (6) individuals identified in the request.

#### IBM Response to letter of 3/14/05:

Without waiving the objections, see response to 7 above. We will also produce Ms. McGloin's and Ms. Smith's resumes to the extent they can be located through a reasonable search.

### REQUEST NO. 17

Documentation of skill groups identified by Ms. Patricia McGloin which included an assessment of numerous employees and how the skills of those employees matched the skills needed by IBM.

### RESPONSE NO. 17

IBM objects to this request on the grounds that it is vague, overbroad, unduly burdensome and seeks documents which are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. IBM also objects to producing documents that would violate the privacy of another employee or would provide confidential information concerning another employee. Subject to and without waiving these objections, IBM refers Rossiter to the documents to be produced in response to Request No. 9, subject to Rossiter entering into a suitable confidentiality stipulation.

#### Plaintiff's letter of 3/14/05

IBM refers to its response to Request No. 9, for which the Defendant has only produced "IBM Marketing Professional Career Skills List By Job Level Integrated Marketing Communications Discipline," dated May 2001, which does not adequately address either Request No. 9 or Request No. 17.

PRINCE . LOBEL . GLOVSKY & TYE

Kevin G. Powers, Esq.
Page 12 of 12
April 4, 2005

IBM Response to letter of 3/14/05:

We produced the selection work sheets for the skill group members to which Mr.

Rossiter was compared.

Very truly yours,

Daniel S. Tarlow

DST/lk
cc:    Terrence Corrigan, Esq.

# EXHIBIT 4

**Prince, Lobel, Glovsky & Tye LLP**
Attorneys at Law

585 Commercial Street
Boston, MA 02109-1024

(617) 456.8000 Tel
(617) 456.8100 Fax
www.plgt.com

*Via Hand Delivery*

April 11, 2005

Kevin G. Powers, Esq.
Rodgers, Powers & Schwartz LLP
18 Tremont Street
Boston, MA 02108

Re:     Dennis Rossiter v. International Business Machines Corporation

Dear Kevin:

In accordance with my letter of 4-4-05, enclosed please find a supplemental document production. Set forth below is the batestamp number and the request to which the document is responsive:

- Batestamp # I000137-142—Request 10.
- Batestamp # I001958– Request 7.
- Batestamp # I001959-1971, 1973-1975—Request 7

Given the overlapping nature of Mr. Rossiter's document requests, the fact that we have designated documents responsive to certain requests does not mean that those documents are not responsive to other requests as well.

Very truly yours,

Daniel S. Tarlow

DST/lk
cc:     Terrence Corrigan, Esq.

PRINCE ▪ LOBEL ▪ GLOVSKY & TYE LLP