UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DENNIS ROSSITER )<br>     Plaintiff, )<br> )<br>v. )<br> )<br>INTERNATIONAL BUSINESS )<br>MACHINES CORPORATION )<br>     Defendant. )<br> ) | C.A.  No.  04 CR 10069DPW |

**REPLY MEMORANDUM OF DEFENDANT
INTERNATIONAL BUSINESS MACHINES CORPORATION
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant International Business Machines Corporation ("IBM") hired Dennis Rossiter when he was 53 and laid him off seven years later (at age 59) as part of a large reduction-in-force. In implementing the RIF, IBM compared Rossiter to four other employees and laid off the two with the lowest assessments. Out of these uncontested facts, Rossiter tries to salvage his age discrimination claim by contending that he should have been retained because his performance was "excellent." Even if true, this is beside the point: at issue is his ranking among his peers, and in his 32-page Statement of Facts and 20-page Opposition he does not even address this issue. IBM submits this reply to address this and several other issues raised by Plaintiff's Opposition.

**I.     PLAINTIFF FAILS TO MAKE OUT A *PRIMA FACIE* CASE**

     **A.     Plaintiff Cannot Make Out a Prima Facie Case Simply Because His
           Job Duties Were Reassigned to Younger Employees**

Rossiter wants this Court to infer discrimination because his duties were reassigned to three "younger" employees (Karen Smith, Carol McNerney, and Ray

Chang). He argues that this fact satisfies the fourth element of the prima facie case. (Opposition at 11-12, citing to Koster v. Trans World Airlines, Inc., 181 F.3d 24 (1st Cir.), cert. denied, 528 U.S. 1021 (1999), and Hidalgo v. Overseas Condado Ins. Agencies, Inc., 120 F.3d 328 (1st Cir. 1997).)

But, this is not the legal standard. Rossiter's analysis conflates the RIF and non-RIF analyses. In a RIF, a plaintiff needs to show more than reassignment:

> Merely demonstrating that, as a result of the reduction in force, the employer consolidated positions or allocated duties of discharged employees to other existing employees does not itself raise a reasonable inference that the employer harbored discriminatory animus toward any one employee. … [W]e are saying that the employee must come forward with something more than evidence of the inevitable transfer of his or her responsibilities to existing employees.

Lewis v. City of Boston, 321 F.3d. 207, 216 (1st Cir. 2003). Moreover, Hidalgo, one of plaintiff's cites, says the same thing. 120 F.3d at 334 n. 6. As for Koster:

> [It] … appears to have taken a more lenient approach, when compared to other First Circuit cases … Under Hidalgo and LeBlanc, it appears that a prima facie case is not established in a reduction of force case simply by showing that job duties were redistributed to a number of people, or added to someone else's existing workload, as was adduced in Koster. Instead, the plaintiff must show that a single employee was transferred, hired, or reassigned to perform plaintiff's former duties as their main job function. In Lewis v. City of Boston, … the First Circuit most recently followed the more stringent tack of Hidalgo and LeBlanc.

Burdick v. Fuller Box Co., 2003 WL 21692107, at *5 (D.R.I. 2003).

Accordingly, under the most recent First Circuit precedent, Rossiter cannot establish a prima facie case merely because other employees added Rossiter's former duties to their pre-existing jobs.[1] To the extent that Rossiter implies that McNerney or Chang were hired to perform his job duties (Opposition at 11), this is false. Indeed, Rossiter acknowledges that McNerney joined Lefebvre's MD Marketing organization in

---

[1] In discussing pretext (at pages 9-11), IBM addresses Rossiter's suggestion that there was something suspicious about IBM reassigning his duties to the purportedly less qualified Smith, McNerney and Chang.

January 2001, well before the layoff. See Rossiter's Statement of Facts in Dispute at ¶ 1.22. See also Second Affidavit of Mark Lefebvre at ¶ 2, attached hereto as Attachment 1.[2] As for Chang, he worked in Lefebvre's organization from August 2001. Id. at ¶ 3. Chang simply changed managers within the group when two of his direct supervisors departed in the fall of 2001. Id.

### B. The Layoff Statistics Do Not Raise an Inference of Discrimination

Rossiter also wants this Court to infer discrimination based on highly selective statistics, which he repeats in various permutations, and which boil down to the fact that all of Lefebvre's employees who were fifty-five and older were laid off – all four of them. Rossiter relies on an Eighth Circuit case for the purported holding that the "termination of 2 oldest members of [a] 9-person department permits [an] inference that age was a factor." (Opposition at 12-13, citing to MacDissi v. Valmont Indus., Inc., 856 F.2d 1054 (8th Cir. 1988).)

Contrary to Rossiter's claims, the layoff statistics do not permit an inference of discrimination. He leaves out essential facts. First, IBM selected older *and younger* employees in Lefebvre's organization for layoff in similar percentages. Of the employees 30 and younger, 3 of 5 (or 60%) were laid off. An *identical* percentage of the employees 50 and older were laid off: 6 out of 10. See Defendant IBM's Statement of Undisputed Facts ("IBM's Statement of Undisputed Facts") at ¶¶ 42-43; and see Affidavit of Laurie F. Rubin at ¶ 3, attached as Attachment 2 hereto.

Second, 30 of the 46 employees in Lefebvre's organization (or 65%) were 40 or older before the layoff. Within Rossiter's Band 9 group, 4 of the 5 employees were over

---

[2] Rossiter further acknowledges that McNerney began to assume some of his naming responsibilities in the summer of 2001. See Rossiter's Statement of Facts in Dispute at ¶ 1.24.

3

40 and the average age was 51 years old.  Moreover, the layoffs *did not affect* the overall demographics.  After the layoff, 21 of the 30 remaining employees (or 70%) were 40 or older.  The average age (42) barely changed.  See IBM's Statement of Undisputed Facts at ¶ 43.  In Plaintiff's Statement of Facts in Dispute, at ¶ 1.44, he acknowledges that the mode and median age did not change.   Indeed, IBM hired Rossiter when he was 53.

Rossiter's case citations do not help him.  MacDissi presented an entirely different scenario because the older employees *only* were let go, and after the layoff, all but one of the remaining employees were 33 or younger.  Rossiter's citation to Sullivan v. Liberty Mutual Insurance Company similarly refers to a situation where the employer laid off the employees in the protected category only.  (Opposition at 12, citing to 444 Mass. 34, 45 n. 14 (2005).)  That is not the case here:  IBM laid off the younger and older employees in similar percentages.  Confronted with an identical factual scenario, the Eighth Circuit held that its earlier decision in MacDissi does not apply:

> [I]n [MacDissi], the two oldest employees in a small department were terminated; here, one of the oldest employees and one of the youngest employees in a similarly small department were terminated. Contrary to [plaintiff's] assertions, the outcome in this case is thus not the sort of result "which could cause a reasonable trier of fact to raise an eyebrow."

Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 778 (8th Cir. 1995).  Simply put, there is no inference of discrimination where an employer, like IBM here, lays off employees at both ends of the age spectrum.

Moreover, none of Rossiter's case citations eliminate the requirement that a sample size needs to be statistically significant, a standard not met here:

> [T]he fact that the appellant was older than all but one of the persons retained proves nothing of any consequence. The appellant's burden was to adduce facts tending to show that [the employer] furloughed him because of his age, … and he

cannot carry that burden simply by a comparison of ages within a sample that lacks statistical significance.

Cruz-Ramos v. Puerto Rico Sun Oil Co., 202 F.3d 381, 385 (1st Cir. 2000).[3]

In an attempt to buttress his claim, Rossiter also points to cases where courts have held that demographic imbalances in the workforce may be probative of discrimination. (Opposition at 13-14, citing, e.g., to Lipchitz v. Raytheon Co., 434 Mass. 493, 508-509 (2001) (on the issue of gender discrimination, it was noteworthy that there were no women in company's corporate ranks until 1993).) This analysis backfires because, as discussed above, IBM had a high percentage of older workers (70% *after* the layoff). There is no workforce imbalance and Rossiter's statistics, however he slices them, do not permit an inference of discrimination.

## II. PLAINTIFF FAILS TO ESTABLISH PRETEXT

### A. Rossiter Cannot Establish Pretext By Challenging the Assessments

#### 1. Rossiter Cannot Show Pretext Since He Has No Evidence That His Skills Were Superior To Employees in His Skill Group

Rossiter challenges his layoff by contending that he was an "excellent" employee. (Opposition at 15-17.) IBM addressed this issue in its initial moving papers. See IBM's Memorandum in Support of Motion for Summary Judgment at 14. The issue is not whether Rossiter was performing his job well but how he compared to others in his skill group. Most significantly, and this is the key point, Rossiter's Opposition is fatally flawed because it does not draw any comparisons to the three employees retained in his

---

[3] MacDissi does not say that statistics based on a small sample are meaningful on their own. Given the posture of the case (post trial), the court did not analyze the statistics in isolation, but instead relied on evidence of pretext. MacDissi at 1058 ("[Plaintiff] provides independent, direct grounds for disbelieving [the employer's] explanation for his layoff, and so his quantitative evidence does not need to reach the degree of certainty required of plaintiffs who present no proof of discrimination besides a statistical pattern."). Moreover, MacDissi did not eliminate the requirement that a plaintiff needs to control for relevant variables, such as relative rankings. Hutson, 63 F.3d at 777.

skill group. Without such evidence, Rossiter's self-assessments are meaningless.[4] This is a glaring deficit in plaintiff's Opposition, because there is no way that he can establish pretext without comparative evidence.

### 2. McGloin Followed the Layoff Protocols

Contrary to Rossiter's claims, McGloin followed the required layoff procedures:

First, Rossiter claims that McGloin selected three skills that were not critical (Opposition at 14), meaning that they were not designated "critical" on the skills listing. He has no evidence, however, that she did not think that these were critical, and there is nothing in the layoff guidelines that prohibited her from exercising her judgment. More significantly, this is a non-issue since Rossiter does not contend that she selected the skills in a biased way so as to lead to his layoff. See IBM's Statement of Undisputed Facts at ¶ 31.

Second, Rossiter claims that McGloin never consulted the skills document before selecting employees for layoff. (Opposition at 14.) This is wrong. The document that McGloin testified that she did not consult was Exhibit 5 to her deposition, which was a description of IMC skills taken from IBM's website. See excerpts from deposition of Patricia McGloin at pp. 49-51 and Exhibit 5 thereto, which are included in Attachment 3 hereto. The skills list was Exhibit 6 to her deposition, and she specifically testified that she utilized the skills list "to assist [her] in identifying the skills required and the level of skill required for the individuals in the skill groups." See excerpts from deposition of

---

[4] At most, Rossiter has an oblique (and misleading) reference to Guynn, where he claims that McGloin "could not testify to the fact that Guynn performed at a higher skill level than Rossiter." (Opposition at 14.) McGloin responded to a question about Guynn's skill levels by stating that Guynn performed at a higher level on the six skills assessed. Rossiter's counsel then asked a follow-up question: "So you are saying that you believe for all of those skills identified in the work sheet that Guynn was operating at a higher level than Rossiter?" To which McGloin answered: "Yes." See excerpts from deposition of Patricia McGloin at pp. 118-119, attached hereto as Attachment 3.

Patricia McGloin at pp. 51-52, and Exhibit 6 thereto, which are included in Attachment 3 hereto.

Third, Rossiter claims that McGloin and Lefebvre distorted the term "different job categories" by substituting bands for skills. (Opposition at 14.) In other words, he contends that the skill groups should have been comprised of people in different bands, so that Karen Smith would have been in his skill group. He is misreading the Selection Guidelines, developed by IBM for application companywide. As this document makes crystal clear, McGloin was *required* to compare people within the same band. The Guidelines expressly state that skill group members must be in the "same salary band." See Second Affidavit of Patricia McGloin at ¶ 4, attached hereto at Attachment 4.

Fourth, Rossiter claims (without citation) that McGloin did not follow the guidelines because she was supposed to complete selection worksheets before identifying "surplus." (Opposition at 15.) She *did* follow this procedure: Rossiter was not identified for layoff until all the selection sheets in his skill group were completed. See excerpts from deposition of Patricia McGloin at pp. 116-117, attached hereto at Attachment 3.

In short, McGloin followed the required procedures.

> **B.    Rossiter Cannot Establish Pretext Because There Was No Discriminatory Corporate State of Mind**
>
> **1.   Rossiter Cannot Shore Up His Claim By Relying on Alleged Discriminatory Animus of Non-Decisionmakers**

To try and build up his claim, Rossiter goes through a litany of petty slights, starting with a job interview that actually led to his hire. (Opposition at 18-19.) He tacks on the self-serving observation that these represented "preconceived, age

7

stereotyped notions." (Opposition at 19.) These examples do not allow him to establish pretext or discrimination in connection with his layoff, many years later.

First, "'[a] plaintiff [claiming discrimination] "may not prevail simply by asserting an inequity and tacking on the self-serving conclusion that the defendant was motivated by discriminatory animus.'" Santiago v Canon U.S.A., Inc., 138 F.3d 1, 5 (1st Cir. 1998) (citing Coyne v. City of Somerville, 972 F.2d 440, 444 (1st Cir. 1992) (in turn quoting Corea-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 53 (1st Cir. 1990).)

Second, to be admissible, there must be some relationship between the earlier alleged acts of discrimination and the challenged employment action. There is none here. "The biases of one who neither makes nor influences the challenged personnel decision are not probative in an employment discrimination case." E.g., Smith v Stratus Computer, Inc., 40 F.3d 11, 18 (1st Cir. 1994), cert. denied, 514 U.S. 1108 (1995) and Woods v. Friction Materials, Inc., 30 F.3d 255, 258, n.1 (1st Cir. 1994) (both quoting Medina-Munoz v R.J. Reynolds Tobacco Co., 896 F.2d 5, 10 (1st Cir. 1990)). See also, e.g., Laurin v. Providence Hosp., 150 F.3d 52, 58 (1st Cir. 1998) (holding that even if the plaintiff's direct supervisors expressed discriminatory animus, it would be meaningless because the plaintiff "failed to adduce competent evidence that her immediate supervisors played a meaningful role in the subsequent Hospital [adverse employment actions]").

### 2.     Rossiter Has No Evidence of Bias By McGloin or Lefebvre

As for McGloin and Lefebvre, Rossiter has no evidence of bias whatsoever, as his two paltry examples make clear:

First, Rossiter points to a time when he worked under McGloin and Ed Abrams,[5] where Abrams promoted Marge Oppold to Manager of Events. (Opposition at 19.) This is an odd example of McGloin's purported bias because it was Abrams who made this decision. See IBM's Statement of Undisputed Facts at ¶¶ 72-74. Moreover, Oppold was performing the events function before the promotion to Events Manager – this was simply an expansion of her existing duties brought about by a business reorganization. Id. Rossiter is basically arguing that Oppold should have been removed from her job so that he could be promoted, an absurd position.

Rossiter's sole other example is based on a comparison of McGloin's treatment of him and Karen Smith. Rossiter claims that it was somehow discriminatory for McGloin to give Smith a web-based project, instead of him. (Opposition at 20.) But he has nothing to support this self-serving conclusion other than speculation.

This is all Rossiter offers to impugn McGloin (the first IBM manager to give him positive performance evaluations). Neither example shows pretext or discrimination.

***

Rossiter also attacks Smith's performance in a misguided attempt to suggest that she should have been laid off instead of him. This attack on Smith is irrelevant because she was not in Rossiter's band and therefore she was not a comparator in the layoff process. See Second Affidavit of Patricia McGloin at ¶¶ 4-5, attached hereto at Attachment 4.

Rossiter's attack is also flatly mistaken. He casts aspersions on Smith's performance based mainly on his say-so, without record support. In fact, Smith was not

---

[5] Rossiter incorrectly gives Abrams's age as 28. See Rossiter's Statement of Facts in Dispute at ¶ 1.11. Abrams was instead 38. See Exhibit A to Affidavit of Dennis Rossiter, which shows that Abrams's date of birth was September 29, 1961.

9

the poor performer that Rossiter makes her out to be. In Smith's performance evaluation for 2001 she received a "two" rating, meaning that she achieved or exceeded commitments. See Second Affidavit of Patricia McGloin (Attachment 4), at ¶ 2. This is the *same* rating that Rossiter referred to, while describing his own performance rating, as "excellent." (Opposition at 16.)

Rossiter also wrongly accuses McGloin of "testifying falsely" at her deposition "that Ed Abrams never had to intercede on behalf of Smith due to Smith's performance-related problems with the PowerPC product line." (Opposition at 20.) Rossiter does not have the ammunition to support this broadside: he cites to an e-mail, which does not support his accusations. See Affidavit of Dennis Rossiter (Exhibit 2 to Rossiter's Statement of Facts in Dispute), at ¶ 17 and Exhibit G thereto (5-26-00 e-mail from Ed Abrams). Moreover, Smith's evaluation for 2001 demonstrates that she continued to have responsibilities for the PowerPC product line and that she performed well in that role throughout 2001. See Second Affidavit of Patricia McGloin (Attachment 4) at ¶¶ 2-3; see also Second Affidavit of Karen Smith at ¶ 2, which is attached hereto at Attachment 5.[6]

### C. Rossiter Cannot Establish Pretext By Challenging the Skills of People Who Were Not in His Skill Group

In his last stab at showing pretext, Rossiter argues that IBM's decision to lay him off masks discriminatory animus because two of the people who assumed his naming-related job functions after the layoff (McNerney and Chang) were less qualified than he

---

[6] Rossiter also claims that McGloin falsely attested in a position statement filed at the MCAD that his demotion in 1977 by a previous manager (James Monahan) was because of concerns over his performance, rather than the correct reason – a reorganization. (Opposition at 7.) As the last page of the position statement makes clear, it was prepared by and signed by IBM's counsel. In attesting to the position statement, McGloin relied on that attorney to investigate Rossiter's earlier work history in the period before she became Rossiter's supervisor.

was – and he also repeats the incorrect statement to the effect that Chang was hired mid-layoff.  This argument is also without merit.

On the qualifications front, even if Rossiter were correct, it is irrelevant because McNerney and Chang were not his comparators in the layoff decision.  Rossiter's skills were assessed vis-à-vis the other Band 9 employees, not McNerney or Chang.  Moreover, IBM decided to move Rossiter's naming function to McNerney *before* the layoff, as Rossiter himself acknowledges. (Opposition at 6.)  Therefore Rossiter's qualifications to perform naming functions (compared to others) played no role in the layoff decision.

As for Chang's purported "new" hire, as discussed earlier at page 3, Chang was not hired during the layoff period.  Overall, Rossiter has no evidence of pretext.

## CONCLUSION

For all of the above reasons, and the reasons in IBM's moving papers, summary judgment should be granted in IBM's favor.

Respectfully Submitted,

**INTERNATIONAL BUSINESS MACHINES CORPORATION**

By its attorneys,

    /s/ Daniel S. Tarlow
Daniel S. Tarlow, BBO #552920
Laurie F. Rubin, BBO #564947
Prince, Lobel, Glovsky & Tye LLP
585 Commercial Street
Boston, MA 02109
(617) 456-8000

Dated:  September 2, 2005