UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DENNIS ROSSITER )<br>Plaintiff, )<br>)<br>v. )<br>)<br>INTERNATIONAL BUSINESS )<br>MACHINES CORPORATION )<br>Defendant. ) | C.A. No. 04 CR 10069DPW |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S**
**MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS**

This is an action brought by Dennis Rossiter ("Rossiter"), a former employee of International Business Machines Corporation ("IBM"), who claims that IBM violated federal and Massachusetts age discrimination laws by including him in a layoff of over 1,200 employees in January 2002. IBM, which hired Rossiter when he was 53 and laid him off six years later, maintains Rossiter's layoff had nothing to do with his age but was instead based on the Company's assessment of his skills compared to other employees.

Plaintiff now moves to compel the production of documents in response to twelve document requests. Plaintiff's motion fails on multiple grounds. First, his motion to compel – which he has filed approximately seven months after discovery closed and three months after filing his opposition to summary judgment – is untimely and fails to comply with Rule 56(f). Second, plaintiff has violated Local Rule 37.1's requirements regarding the contents of a supporting memorandum. Third, plaintiff's motion fails because the documents he seeks either do not exist or are not relevant or reasonably calculated to lead

to the discovery of admissible evidence. IBM has complied with its discovery obligations and Plaintiff's Motion to Compel should be denied.

## **Procedural Background**

On May 4, 2005, IBM filed its motion for summary judgment. On May 18, 2005, plaintiff filed his opposition. The summary judgment hearing is set for October 5, 2005. Nowhere in plaintiff's opposition did he say that he needed more discovery to respond to IBM's motion. See Plaintiff Dennis Rossiter's Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Opp. to Def.'s Mot. for Summary Judgment"), attached hereto as Exhibit 1.

On August 11, 2005, almost three months after filing his opposition to summary judgment, plaintiff's counsel's office sent IBM's counsel a draft motion to compel and indicated that plaintiff's counsel would file the motion unless the parties could reach agreement over the contested items. Affidavit of Daniel S. Tarlow ("Tarlow Aff."), attached hereto as Exhibit 2, at ¶ 2. After giving IBM's counsel a chance to review the issues, the plaintiff filed the motion on August 24, 2005. The plaintiff contends that he needs the documents to "prepar[e] for the hearing on the summary judgment motion" and to "prepar[e] for the trial of this action." Plaintiff's Memorandum In Support of His Motion to Compel the Production of Documents ("Pl.'s Mem.") at 25.

Document Production History

On or about January 21, 2003, while the matter was pending before the Massachusetts Commission Against Discrimination ("MCAD"), plaintiff served a request for production of documents. See Affidavit of Laurie F. Rubin ("Rubin Aff."), attached hereto as Exhibit 3, ¶ 2. On March 11, 2003, IBM served a written response, indicating

that some of the requested documents were confidential and that IBM would produce the confidential documents after the parties entered into a suitable confidentiality stipulation. Rubin Aff., ¶ 3. On March 31, 2003, IBM produced the documents and again indicated that additional documents, which IBM considered confidential, would be forthcoming once the parties agreed on a confidentiality stipulation. See Rubin Aff., ¶ 4.

On January 12, 2004, the plaintiff filed in this Court. Under this Court's order, non-expert discovery was to be completed by January 4, 2005. Plaintiff served his First Request for Production of Documents, which is the subject of this motion, on or about June 22, 2004, with most of his requests tracking the language of the request for documents that he served while the matter was pending before the MCAD. See Rubin Aff., ¶ 5. On July 23, 2004, IBM served its response, which referred plaintiff to the documents that it produced while the case was pending before the MCAD and also indicated that additional "confidential" documents would be produced upon execution of a suitable confidentiality stipulation. See Rubin Aff., ¶ 6.

In November 2004, IBM produced additional documents, and reminded plaintiff's counsel that IBM would provide the "confidential" documents as soon as the parties reached agreement over a confidentiality stipulation. Tarlow Aff., ¶ 3. On December 15, 2004, IBM received Rossiter's signed confidentiality stipulation. Tarlow Aff., ¶ 4. The very next day, IBM produced the documents it considered confidential. Id. at ¶ 5.[1] On March 14, 2005, plaintiff's counsel wrote to IBM's counsel seeking additional documents

---

[1] Inexplicably, plaintiff asserts (without citation) that "[n]otwithstanding this signed document, IBM failed to supplement its document production" and that IBM's ongoing failure to produce confidential documents is "obstructionist." Pl.'s Mem. at 3, 11-12. Somehow, plaintiff overlooks the fact that IBM promptly produced the confidential documents -- the day after he signed the confidentiality stipulation – and that he was the one who took approximately twenty-one months to sign the confidentiality stipulation. See Rubin Aff., ¶ 3; Tarlow Aff., ¶¶ 4-5.

in connection with thirteen of the document requests.  <u>See</u> Letter from Kevin Powers to Daniel S. Tarlow, attached as Exhibit 2 to Pl.'s Mem.   On April 4, IBM's counsel responded, agreeing to supplement IBM's production to four of the requests.  <u>See</u> Letter from Daniel S. Tarlow to Kevin G. Powers, attached as Exhibit 3 to Pl.'s Mem.  On April 11, 2005, IBM supplemented its document production.  <u>See</u> Letter from Daniel S. Tarlow to Kevin G. Powers, attached as Exhibit 4 to Pl.'s Mem.

**<u>Specific Requests in Dispute</u>**

Plaintiff's motion now questions IBM's responses to twelve of the document requests, specifically request numbers 2, 3, 5, 6, 7, 8, 9, 12, 13, 14, 15, and 17.

**<u>Facts Relevant to Discovery Matters to Be Decided</u>[2]**

Most of the disputed items fall into one of two categories:  either (1) documents concerning Rossiter's "comparators" in the layoff process or (2) documents concerning individuals who received jobs from which Rossiter was allegedly excluded.

<u>The Layoff and the Layoff Comparators</u>

As a result of a significant downturn in the microprocessor/semiconductor industry, IBM's Microelectronics Division ("MD") conducted a large scale lay-off in the fall of 2001 of more than 1,200 employees.  <u>See</u> Defendant IBM's Statement of Undisputed Facts Pursuant to Local Rule 56.1 ("Statement of Undisputed Facts"), copy attached hereto as <u>Exhibit 4</u> (without attachments), at ¶ 4; Plaintiff Dennis Rossiter's Rule 56.1 Statement of Facts in Dispute (Pl.'s Statement of Facts in Dispute"), copy attached hereto as <u>Exhibit 5</u>, at 18 (indicating no dispute with IBM's paragraph 4).

IBM issued guidelines and conducted training for managers on the methodology for selecting employees to lay-off.  Statement of Undisputed Facts at ¶¶ 9-10; Pl.'s

---

[2] Most of the facts are taken from the summary judgment motion, now pending before this Court.

Statement of Facts in Dispute at 18-19 (conceding these points). Managers were required to place employees into skill groups, to compare the employees' skills within those skill groups and to select for layoff those employees in the group who ranked lowest in the skill assessments. Statement of Undisputed Facts at ¶ 11; Pl.'s Statement of Facts in Dispute at 20-21 (conceding these points). Accordingly, in making layoff decisions, employees were compared only with members of their particular skill group.

To be placed in the same skill group, employees needed to be in similar positions and in the same salary "band." Statement of Undisputed Facts at ¶ 11. Although plaintiff disputes that skill group members needed to be in the same salary band (Pl.'s Statement of Facts in Dispute at 20-21), he is misreading IBM's Selection Guidelines, which make clear that all managers were *required* to compare people within the "same salary band." See copy of Second Affidavit of Patricia McGloin at ¶ 4, attached hereto as <u>Exhibit 6</u> (original is filed with Defendant's Summary Judgment Reply).

Under the layoff, Mark Lefebvre, Director of MD Marketing, was directed to lay off 20 or 21 employees (out of the 46 employees in his groups). Statement of Undisputed Facts at ¶¶ 7, 12; Pl.'s Statement of Facts in Dispute (conceding these points). Lefebvre told Patricia McGloin Waitt ("McGloin"), the manager of the marketing communications group (which was one of the groups reporting to Lefebvre), that her group was expected to contribute to the lay-off, but he did not give her a specific target. Statement of Undisputed Facts at ¶¶ 6, 7, 13; Pl.'s Statement of Facts in Dispute (conceding these points).

Plaintiff was one of the employees in McGloin's group. Statement of Undisputed Facts at ¶ 6; Pl.'s Statement of Facts in Dispute (conceding these points). Rossiter had

been hired by IBM in January 1995, at age 53, and had reported to James Monahan before reporting to McGloin. Statement of Undisputed Facts at ¶¶ 1, 2, 3; Pl.'s Statement of Facts in Dispute (conceding these points).

In following the lay-off selection guidelines, McGloin grouped Rossiter in the skill group for "Integrated Marketing Communications Band 9." Statement of Undisputed Facts at ¶ 16; Pl.'s Statement of Facts in Dispute (conceding these points). This skill group consisted of 5 people: Dennis Rossiter, Ronald Milos, Kathy Weaver, Kathy Spilke, and Deborah Guynn. Statement of Undisputed Facts at ¶ 16; Pl.'s Statement of Facts in Dispute (conceding these points). McGloin assessed the skills of the persons in this skill group who reported directly to her (Rossiter and Guynn) and she asked Robert Rohrer, a manager in her group, to assess the skills of his direct reports (Milos, Weaver, Spilke). Statement of Undisputed Facts at ¶ 20; Pl.'s Statement of Facts in Dispute (conceding these points). The overall rankings were as follows, from highest to lowest: Guynn, Milos, Spilke, Weaver and Rossiter. Statement of Undisputed Facts at ¶ 23; Pl.'s Statement of Facts in Dispute (conceding these points).

Based on these assessments, McGloin recommended (and Lefebvre approved) the layoff of the two employees with the lowest assessments: Rossiter and Weaver. Statement of Undisputed Facts at ¶ 24; Pl.'s Statement of Facts in Dispute at 24 (disagreeing with McGloin's assessment of his skills, but not contesting that she laid off the two employees in this skill group who had the lowest skills assessments). Rossiter was age 59 at the time, and Weaver was 54. Statement of Undisputed Facts at ¶ 24; Pl.'s Statement of Facts in Dispute (conceding these points). The employees retained— Milos,

Spilke and Guynn—were ages 54, 49, and 38, respectively. Statement of Undisputed

Facts at ¶ 24; Pl.'s Statement of Facts in Dispute (conceding these points).

As detailed below, IBM produced documents regarding this selection process and

the employees in Rossiter's skill group. Much of plaintiff's motion seeks to obtain

personnel documents regarding other employees, who were not in his skill group, but

who were in Lefebvre's organization.

The Alleged Denial of Promotional Opportunities

Plaintiff also contends that he was never given an opportunity to apply for certain

positions because they were not posted – and that this non-posting was a sign of age

discrimination. Pl.'s Mem. at 18. In opposing summary judgment, Rossiter made clear

that his claim revolved around his layoff, and his concerns around allegedly being denied

promotional opportunities was not an "independent claim," but instead merely

"background evidence" to support his claim that his layoff was discriminatory. Pl.'s

Opp. to Def.'s Mot. for Summary Judgment, Exhibit 1 hereto, at 2.

As detailed below, IBM agreed to produce documents that it could locate for each

position challenged by plaintiff, except for two positions: one filled by Phil Bender, and

another where Jim Hasl was the hiring manger. The undisputed facts demonstrate that

Bender's position *was* posted and Rossiter did not apply because he was not interested in

the job. Statement of Undisputed Facts at ¶ 94; Pl.'s Statement of Facts in Dispute

(conceding these points). As for the position that Jim Hasl was trying to fill, Rossiter

testified in his deposition that this position was posted after Rossiter received his layoff

notice, that Rossiter ran out of time to pursue the position (his layoff notice informed him

that he had to leave the company if he had not found a job by January 3), that he was not

not accusing of Hasl of discrimination, and that the did not have a complaint about not getting this job. See excerpts from Volume 2 of the plaintiff's deposition, at pp. 49-51, attached hereto to Tarlow Aff.

## ARGUMENT

### I.    PLAINTIFF'S MOTION SHOULD BE DENIED BECAUSE IT IS UNTIMELY AND VIOLATES RULE 56(f)

Plaintiff's motion fails on multiple grounds. First and foremost, it is untimely and fails to comply with Rule 56(f) of the Federal Rules of Civil Procedure. Although couched as a "motion to compel," plaintiff's motion is really an improper end run around Rule 56(f). It was not until August 11, 2005, that plaintiff raised issues around IBM's document production. Tarlow Aff., ¶ 2. This was approximately seven months after the close of discovery and three months after plaintiff filed his opposition to summary judgment. Plaintiff's summary judgment opposition does not indicate *anywhere* that he needs more discovery to respond to IBM's motion. Plaintiff now contends, however, that he has been "compromised" in his "preparation of his opposition to summary judgment" and that he will be at a "disadvantage in preparing for the hearing on the summary judgment motion." Pl.'s Mem. at 25. This is preposterous!

It is too late for plaintiff to invoke Rule 56(f) or to otherwise move to compel. Analyzing an almost identical situation, in Ayala-Gerena v. Bristol Myers-Squibb Co., the First Circuit affirmed the district court's denial of "what was clearly" an "untimely motion to compel document production." Ayala-Gerena, 95 F.3d 86, 94 (1st Cir. 1996). In Ayala-Gerena, the plaintiffs filed a motion to compel discovery well after filing their opposition to summary judgment and well after the discovery deadline. Treating the motion as one under Rule 56(f), the First Circuit first noted that to "invoke Rule 56(f)," a

8

party must do so "within a reasonable time following the receipt of a motion for summary judgment." Ayala-Gerena, 95 F.3d at 92.  The Court noted that the plaintiffs' motion suffered from multiple defects, including that the fact that they never sought an extension of the discovery deadline before filing their opposition to summary judgment, and the fact that their opposition is "deafeningly silent as to their inability to oppose summary judgment due to incomplete discovery." Ayala-Gerena, 95 F.3d at 94.

In a later case, citing to Ayala-Gerena, the First Circuit reaffirmed these principles. See C.B. Trucking, Inc. v. Waste Management, Inc., 137 F.3d 41, 44 (1st Cir. 1998) (to obtain additional discovery after a summary judgment motion has been filed, a party "may not attempt to meet a summary judgment challenge head-on" but must tell the court that it needs additional discovery, must "demonstrate that it was diligent in pursuing discovery" and must "set forth a plausible basis for believing" that certain facts probably exist and will affect the outcome of the pending summary judgment motion).

Rossiter's motion flunks these tests: he did not move to extend discovery, he delayed in raising discovery issues until well after discovery closed, he filed his summary judgment opposition without expressing the need for further discovery, he failed to comply with Rule 56(f) and he now fails to set forth any basis for concluding that additional discovery would affect the pending summary judgment motion.  Plaintiff's motion should be denied.

## II.     PLAINTIFF'S MOTION SHOULD BE DENIED BECAUSE IT VIOLATES LOCAL RULE 37.1

Plaintiff's motion is also defective because it violates this Court's requirements regarding memoranda in support of motions to compel discovery.  Under Local Rule 37.1(B)(3), the plaintiff was required to present "the facts relevant to the discovery

matters to be decided." Other than numerous generalizations, with scant record citations, plaintiff has failed to set forth facts that are relevant to the discovery disputes at issue. See Pl.'s Mem. at 1-2 (setting forth conclusory facts that have limited relevance to plaintiff's discovery issues presented in the memorandum). Later on Plaintiff asserts that "[t]he appropriate comparator group is comprised of the 46 employees in Lefebvre's Microelectronics Marketing Division," id. at 10, apparently based on nothing more than the fact that Lefebvre was given a layoff target for the groups reporting to him. Id.

Plaintiff then goes on to conflate the issue around his layoff with his claim about being denied promotions. See Pl.'s Mem. at 10 ("all employees within the Division competed for job opportunities"), but these are separate issues, and, as discussed below, IBM agreed to produce documents regarding other positions at IBM – other than the position filled by Bender or where Hasl was the hiring manager. Plaintiff fails to provide any information about these two positions other than by incorrectly and without citation referring to the position offered to Phil Bender as "un-posted." Id. at 20. Plaintiff cannot succeed on his motion without providing the requisite factual background.

In addition, under Local Rule 37.1(B)(5), the plaintiff was required to explain his position on each contested item "set forth separately immediately following each contested item." Instead, plaintiff has combined several items together before setting forth his positions on those items. Because plaintiff has failed to comply with Local Rule 37.1(B)(5), and has instead jumbled arguments regarding different requests together, IBM has had been forced to try and parse out plaintiff's concerns regarding each request.

As a result of plaintiff's failure to comply with Local Rule 37.1, his motion should not even be considered by this Court. See, e.g., Hasbro, Inc. v. Serafino, 168

F.R.D. 99, 102 (D.Mass. 1996) (refusing to rule on discovery motion until the court had a motion "which complies with the rules").

Finally, plaintiff has failed to comply with Local Rule 7.1 (B)(4), in that he filed a supporting memorandum which exceeds 20 pages without having sought leave of court.

Overall, as result of plaintiff's failure to comply with the Local Rules concerning motion practice and discovery motions, the court should not consider plaintiff's motion to compel.

### III.  PLAINTIFF'S MOTION SHOULD BE DENIED BECAUSE IBM HAS COMPLIED WITH ITS DISCOVERY OBLIGATIONS FOR EACH OF THE CONTESTED ITEMS

Plaintiff's motion fails because IBM has complied with its discovery obligations.

### Request No. 2

Provide the contents of any and all employment files concerning Mr. Rossiter, including but not limited to:

> a)  All communications, emails, so-called "desk files," meeting notes, and any and all other communications between Ms. Patricia McGloin, Manager Integrated Marketing Communications, Microelectronics Division, and Mr. Mark Lefebvre, Director Microelectronics Marketing, regarding Mr. Rossiter's skill assessment, performance, contribution and potential for future contribution and/or promotion;
> b)  All communications, notes, "desk files," emails between James P. Monahan, Rossiter's former IBM Manager, and Monahan's successor, Patricia McGloin (Mr. Rossiter's direct manager) regarding any aspect of Mr. Rossiter's performance, skills, and potential for promotion; and
> c)  All documents pertaining to Mr. Rossiter of any kind.

### Response

IBM objects to this request on the grounds that it is vague, overbroad, unduly burdensome and seeks documents which are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, and to the extent the following documents can be located after a reasonable search, IBM will produce (a) Rossiter's PBC's, (b) the "360" reports from other employees regarding Rossiter, (c) the skills assessment of Rossiter that was completed before his selection for layoff, and (d) non-privileged communications regarding Rossiter's selection for layoff. In connection with said production, IBM refers plaintiff to

the documents that IBM has already produced in response to request number 2 of plaintiff's first request for production of documents while his case was at the MCAD.

Rossiter Letter of March 14, 2005

IBM has not produced LeFebvre's or Monahan's communications with Patricia McGloin.

Response

We produced the documents we were able to locate through a reasonable search.

Issues Now in Dispute Regarding Request No. 2

For Request Number 2, plaintiff seeks "communication between Lefebvre and McGloin or between Monahan and McGloin concerning Rossiter," and he states that he finds IBM's failure to locate any such documents "not credible" "given that Rossiter reported directly or indirectly to all three." Pl.'s Mem. at 20. Plaintiff also says that, "[t]o the extent that IBM has withheld documents in response to Request No. 2 on the basis of privilege, IBM has failed to provide a privilege log." Pl.'s Mem. at 17.

ARGUMENT

IBM has complied with its discovery obligations. First, IBM has not withheld any documents in response to Request No. 2 on the basis of privilege. Tarlow Aff., ¶ 7. Second, IBM has produced documents that it was able to locate after a reasonable search, as IBM informed Rossiter in response to his March 14 letter. Among other documents, IBM has produced Mr. Rossiter's personnel evaluations, which discuss his performance, and his skill assessment. Tarlow Aff., ¶ 8. Rossiter does not point to any documents that IBM has withheld, but merely asserts that he thinks that his managers should have written to each other about him. Pl.'s Mem. at 20. Plaintiff's argument is based solely on unsupported speculation and his motion should be denied. IBM cannot produce documents that do not exist. See, e.g., Hill v. McHenry, 2002 WL 922157, at *1 (D.Kan. 2002) ("The Court cannot compel the production of documents that do not exist.").

**Request No. 3**

Provide salary plans, including compensation increases, cash awards and performance ratings, and date of birth for all Technology Group and Microelectronics Group marketing personnel from January 1997 to present.

Response

IBM objects to this request on the grounds that it is vague, overbroad, unduly burdensome and seeks documents which are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. IBM also objects to producing documents that would violate the privacy of another employee or would provide confidential information concerning another employee. Subject to and without waiving these objections, upon plaintiff's execution of a suitable confidentiality stipulation, IBM will produce documents that reflect the performance ratings (PBC's) of employees who worked under Patricia McGloin at the time of the layoff affecting the plaintiff, and who were the comparators for the plaintiff in the layoff (i.e., the Band 9, non-managerial employees), and the ages of each such employee.

Rossiter Letter of March 14, 2005

IBM has failed to produce documents responsive to this request; that is, the performance evaluations and other requested documents concerning all Technology and Microelectronics Group marketing personnel from January 1997 to the present. The requested documents include, but are not limited to, the comparator evaluations, e.g., ratings on selection criteria, for layoff of the employees who worked under Patricia McGloin at the time of Plaintiff's layoff.

Response

In our December 16, 2004 production, we produced the information specified in your letter for the relevant group of comparators: Ronald Milos, Kathy Weaver, Karen Spilke, and Deborah Guynn. These are the other skill group members to whom Mr. Rossiter was compared for purposes of the lay-off selection decision. For this group we produced the comparator selection worksheets, as well as the performance ratings for the years 1998-2001. We also produced the dates of birth of all employees in Pat McGloin's group.

Issues Now in Dispute Regarding Request No. 3

For Request No. 3, plaintiff asserts that "the Defendant has not produced performance evaluations for McGloin's band-9 employees, let alone for Rossiter's actual comparator group – the 46 employees in LeFebvre's [*sic*] Microelectronics Marketing Division." Pl.'s Mem. at 12. Plaintiff also seeks "documents pertaining to comparators' salary plans, salary increases, and bonuses." Id.

## ARGUMENT

IBM has complied with its discovery obligations.  IBM responded to this request (which asked for performance "ratings") by, among other things, producing the ratings for all of the employees within Rossiter's skill group.  Tarlow Aff., ¶ 9.  These employees were the only people to whom Rossiter was compared in the layoff process.  See supra at 4-7.  The documents that plaintiff now seeks are irrelevant to his claim and are not reasonably calculated to lead to the discovery of admissible information.

First, plaintiff seeks the performance evaluations of *all* employees within Lefebvre's organization, claiming (without factual basis) that all such individuals were his "comparators" in the layoff.  Pl.'s Mem. at 10.  The undisputed facts (as set forth above) instead demonstrate that other members of Lefebvre's organization were *not* Rossiter's comparators in the layoff.  Accordingly, plaintiff's request for information regarding these employees has no bearing on his claim.  See, e.g., Smith v. Stratus Computer, Inc., 40 F.3d 11, 17 (1st Cir. 1994), cert. denied, 514 U.S. 1108 (1995) ( to be similarly situated for comparison purposes, other employees must be similarly situated "in terms of performance, qualifications and conduct, without such differentiating or mitigating circumstances that would distinguish their situations").

Second, Rossiter seeks salary information regarding all employees in Lefebvre's organization.  But, Rossiter does not have a claim that he was paid less than other employees on account of his age.  Accordingly, this request, too, is irrelevant and not calculated to lead to the discovery of admissible information.

**Request No. 5**

Furnish all correspondence, including email, between and/or among Mark

Lefebvre, Director of Marketing IBM Microelectronics, and Patricia McGloin, Manager of Integrated Marketing Communications IBM Microelectronics, and any other IBM manager or Human Resources employee, which reference, discuss or identify:

    a) Dennis Rossiter;

    b) IBM's efforts to downsize; right size or layoff; and/or

    c) Specific qualifications company employees needed in order to escape downsizing, or qualifications that the company believed it needed in the short- and medium-range future.

<u>Response</u>

    IBM objects to this request on the grounds that it is vague, overbroad, unduly burdensome and seeks documents which are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, IBM refers Rossiter to the documents produced in response to Document Request No. 2.

<u>Rossiter Letter of March 14, 2005</u>

    IBM's response to this request refers to IBM's response to Request No. 2. The document production for Request No. 2 is incomplete.

<u>Response</u>

    See response to request 2.

<u>Issues Now in Dispute Regarding Request No. 5</u>

    Rossiter says that he "seeks all communications between and/or among McGloin, Lefebvre, any other IBM manager, and or Human Resources personnel concerning Rossiter, the layoff, and/or the skills that the Division or IBM wanted in place at the end of the layoff. It is inconceivable, for example, that Lefebvre and McGloin did not communicate about the layoff, their employees, and/or the implementation of the layoff." Pl.'s Mem. at 24.

<div align="center">

<u>ARGUMENT</u>

</div>

    IBM has complied with its discovery obligations. Plaintiff is seeking some of the same documents that he sought through Request No. 2: communications between McGloin and others concerning Rossiter. Plaintiff is also seeking, more broadly, communications regarding the layoff. The response here is the same as to Request No. 2:

<div align="center">

15

</div>

IBM has produced documents that it has been able to locate. Among other things, IBM has produced materials regarding how the layoff was to be performed, including detailing how managers were to define their skill groups and perform their skill assessments, the skill assessments of Rossiter and his comparators, and general communications regarding the layoff affecting Lefebvre's organization. Tarlow Aff., ¶ 10.

As with Request No. 2, Rossiter does not point to any documents that IBM has withheld, but merely asserts, based on nothing but speculation, that he thinks that there should be additional documents. Pl.'s Mem. at 20. This request should be denied. As already noted, IBM cannot produce documents that do not exist.

**Request No. 6**

Provide copies of the Job Requisition forms for the following IBM jobs:

a) All Corporate, Technology Group, and/or Microelectronics Division Marketing Communications jobs that were filled between January 1998 and June 2002, including but not limited to:
b) Director, Integrated Marketing Communications Technology Group;
c) Corporate Events Operations Manager (James Hasl's Group);
d) Technology Group Events Manager;
e) Microelectronics Collateral Manager;
f) PowerPC Marketing Communications Manager and/or Programs Manager;
g) Microelectronics and/or Technology Group Brand Marketing & Corporate Programs Manager; and
h) Interactive Marketing Manager; and
i) Microelectronics Division/Server Group Marketing Services Manager.

Response

IBM objects to this request on the grounds that it is vague, overbroad, unduly burdensome and seeks documents which are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, IBM will produce Job Post reports for the only two positions that Rossiter applied for during the year before his layoff: Program Manager, Web Events and Integrated Marketing Communications Leader. In connection with said production, IBM refers plaintiff to the documents that IBM had already produced in response to request number 6 of plaintiff's first request for production of documents while his case was at the

MCAD. IBM notes that one of these positions – the position of Integrated Marketing Communications Leader – was withdrawn and never filled. The other position was filled in April, but eliminated in late June.

Rossiter Letter of March 14, 2005

IBM's response to the request is not responsive; that is, Plaintiff has requested the Job Requisition forms for ten categories of positions, not merely the positions of Integrated Marketing Communications Leader and Program Manager, Web Events.

Response

Without waiving the objections, we will do a reasonable search for the "job requisitions," if any exist, for the positions listed in subparts b), d), e), f), g), and h). Subpart a) is overbroad, unduly burdensome and seeks irrelevant information. Subpart c) relates to the job Jim Hasl was apparently hiring for at the time of the lay-off. According to your client's testimony, he has no complaint about not getting the job. Subpart i) relates to Phil Bender. As per your client's testimony, he didn't want the job Bender got. He initially feared Bender would "co-opt" him but in the end everything worked out. Your client's testimony has stripped these jobs of any possible relevance.

Issues in Dispute Regarding Request No. 6

Rossiter says that "jobs were created and not posted to 'cherry pick' promotions for certain younger, less qualified employees, and thus Rossiter was foreclosed from applying for jobs about which he had no knowledge until after his co-workers' promotions. … Therefore, in response to Request No. 6, Rossiter requires the job requisition forms for all the positions that he requested, not merely the positions for which he applied. The fact that he later decided that he would not have wanted Phil Bender's job, or any other job, that was not posted, does not bear on the 'fit' that may have existed at the time between Rossiter's skill sets and the position(s), nor on Rossiter's exclusion from notice of and/or consideration for the positions." Pl.'s Mem. at 18. See also id. at 20 ("Rossiter continues to seek the job requisition forms for the positions identified in Request No. 6, including subpart (c), the job Jim Hasl was hiring for at the time of the layoff, and subpart (i), the un-posted position offered to Phil Bender.").

ARGUMENT

With this request, Rossiter is turning to his pursuit of background evidence regarding the denial of jobs. As noted above, Rossiter concedes that he has no claim for the denial of jobs because the statute of limitations would bar such a claim. Be that as it may, IBM has fully complied with its discovery obligations. As the above exchange

makes clear, IBM agreed to produce job requisition forms that it was able to locate for each of the enumerated positions, except for two, the one filled by Phil Bender and the one where Jim Hasl was the hiring manager. As described above, these two positions *were* posted and Rossiter does not claim that he was denied either position for discriminatory reasons. See supra at 7-8. Accordingly, documents regarding these two jobs are irrelevant and not calculated to lead to the discovery of admissible information.

**Request No. 7**

All resumes and any other document which identify the educational background, work background, birth dates, job titles, and job codes of the IBM employees who work or worked to support IBM Technology Group Marketing and/or IBM Microelectronics Marketing, between January 1998 and January 2002, including the following employees:

a) Karen J. Smith, IMC Strategist/Server Group;
b) Carol McNerney, Brand Marketing & Corporate Programs;
c) Cynthia Puttlitz, IMC Manager PowerPC;
d) Ray Chang, Program Manager/Naming;
e) Marge Oppold, Manager/Event Marketing;
f) Phillip Bender, Manager of Marketing Services/Microelectronics Server Group;
g) Ed Abrams, Director Integrated Marketing Communications IBM Technology Group; and
h) Rob Rohrer, Interactive Marketing Manager

Response

IBM objects to this request on the grounds that it is vague, overbroad, unduly burdensome and seeks documents which are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. IBM also objects to producing documents that would violate the privacy of another employee or would provide confidential information concerning another employee. Subject to and without waiving these objections, upon plaintiff's execution of a suitable confidentiality stipulation, IBM will produce resumes of those other employees who worked under Patricia McGloin at the time of the layoff affecting the plaintiff, and who were the comparators for the plaintiff in the layoff (i.e., the Band 9, non-managerial employees), to the extent that such documents can be located after a reasonable search.

Rossiter Letter of March 14, 2005

Again, IBM attempts to impermissibly limit Plaintiff's request. Plaintiff seeks all documents responsive to this request concerning the eight (8) identified employees.

Response

Without waiving the objections, we will agree to produce resumes (if any exist and can be located through a reasonable search), work detail history reports and dates of birth for the people listed in the request except for Phil Bender for the reasons stated above.

Issues Now in Dispute Regarding Request No. 7

Rossiter "continues to seek the resumes of all employees in Lefebvre's Division (Request No. 7)." Pl.'s Mem. at 12.

ARGUMENT

IBM has complied with its discovery obligations – for the same reason set forth in

response to the preceding item. IBM agreed to, and did, produce resumes that it was able

to locate, except for Phil Bender. IBM once again points out that Bender's position has

no bearing on this matter. See supra at 17-18.

**Request No. 8**

Any and all documents, which reference, identify or discuss IBM's decision to lay off Mr. Rossiter, including, but not limited to:

a) Documents which identify the amount of money IBM needed to cut from its entire budget during the time Mr. Rossiter was laid off;
b) business plans showing planned and actual cost reductions;
c) Any analysis, report or memoranda discussing the skills, technical background or educational background needed by IBM employees to remain viable at IBM, whether or not those documents specifically reference Mr. Rossiter;
d) Any and all documents that set forth IBM's layoff or downsizing policy or plan; and
e) Any and all documents that set forth the policy, procedures and/or criteria to be used when implementing a layoff or downsizing.

Response

IBM objects to this request on the grounds that it is vague, overbroad, unduly burdensome and seeks documents which contain confidential business information and documents which are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, and subject to the plaintiff agreeing to a suitable confidentiality stipulation, IBM will also produce documents that reflect the numbers of employees targeted for layoff (in the layoff affecting Rossiter) and who worked for IBM in departments reporting to Mr. Lefebvre, to the extent that such documents can be located after a reasonable search. IBM also refers Rossiter to the documents produced in response to Document Requests No. 2, 4, and 9.

Rossiter Letter of March 14, 2005

Plaintiff seeks all documents pertaining to the layoff selection process as it Pertained to Plaintiff, including documents concerning targeted budgetary reductions, the implementation of cost reductions, and all documents, including e-mails, memoranda, and notes to file, concerning Plaintiff and the layoff, which pre-dated the final "Selection Worksheet."

Response

We produced the documents we were able to locate through a reasonable search, including the selection guidelines, the selection worksheets for your client and the comparators in the same skill group, various charts reflecting the lay-off (including lay-off targets) in MD and Lefebvre's group, and an e-mail from Patricia McGloin to Maria Lipner and Mark Lefebvre about the lay-off target in MD Marketing.

Issues Now in Dispute Regarding Request No. 8

Rossiter states that "[w]ith respect to Request No. 8, Rossiter seeks complete documentation of the Reduction in Force, including all documents concerning the amount of money that IBM needed to cut from the budget, the actual cost reductions made through the RIF, the mix of skills, human capital, and/or institutional experience that IBM sought to retain, and the relationship between these goals and policies and the selection 'guidelines' that IBM produced. Also, IBM has failed to produce the worksheets for Rossiter's comparators; that is for all employees in Lefebvre's Microelectronics Marketing Division." Pl.'s Mem. at 24.

ARGUMENT

IBM has complied with its discovery obligations. As IBM has previously

informed Rossiter, it has produced documents that it has been able to locate regarding

communications to or from Lefebvre and McGloin regarding the layoff. As for the layoff

20

documents, IBM has provided information about the number of people to be laid off from within Lefebvre's organization, overall layoff statistics, training materials provided to managers on how to create "skill groups" and select people for layoff, and the comparator worksheets for Rossiter's skill group. Tarlow Aff., ¶ 11. Once again, IBM notes that it cannot produce documents that do not exist.

To the extent that plaintiff is seeking company documents concerning the layoff more broadly, such as IBM's overall financial need to eliminate the 1,200 or so jobs, such a request is not relevant and not reasonably calculated to lead to the discovery of admissible information. Plaintiff concedes that IBM had legitimate business needs to engage in the layoff. See Statement of Undisputed Facts, at ¶ 5; Pl.'s Statement of Facts in Dispute at p. 18 (conceding these points).

### Request No. 9

All documents which reference, identify or discuss IBM's position set forth in its letter from Michel Mayer, General Manager IBM Microelectronics Division, to Mr. Rossiter that there was a requirement for "skills rebalancing" necessary to reduce costs, including:

> a) Memos, meeting notes, and/or e-mails between and/or among Patrica McGloin, Mark Lefebvre, IBM Human Resources, and any other IBM employee which discuss the need for employees with certain skills and how skills would be "balanced;"
> b) Copies of all resumes of IBM employees in Microelectronics Marketing and/or Technology Group Marketing that show evidence of required skills; and
> c) Copies of skills assessment worksheets pertaining to Mr. Rossiter and all other IBM Microelectronics and IBM Technology Group Marketing employees.

### Response

IBM objects to this request on the grounds that it is vague, overbroad, unduly burdensome and seeks documents which contain confidential business information and documents which are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, and subject to the plaintiff agreeing to a suitable confidentiality stipulation, IBM will produce documents that reflect the number of employees targeted for layoff (in the layoff

affecting plaintiff) and who worked for IBM in departments reporting to Mr. Lefebvre, to the extent that such documents can be located after a reasonable search. IBM also refers plaintiff to the documents produced in response to Document Requests No. 2 and 9.

<u>Rossiter Letter of March 14, 2005</u>

IBM has failed to produce documents which are responsive to this request and impermissibly seeks to restate and narrow Plaintiff's request.

<u>Response</u>

We produced the documents we were able to locate through a reasonable search, including the selection guidelines which set forth the methodology of skill group analysis, selection work sheets for the skill group members to which Mr. Rossiter was compared, and the resumes we could locate for those skill group members. We also produced the Age and Title Information (OWBPA Report) for the MERA.

<u>Issues Now in Dispute Regarding Request No. 9</u>

Plaintiff seeks "all documents concerning Rossiter's skills, the skills and assessments of Rossiter's Division Comparators, and/or IBM's 'skill rebalancing.'" Pl.'s Mem. at 13.

<div align="center">ARGUMENT</div>

IBM has complied with its discovery obligations. The documents that plaintiff seeks are the same as those discussed in connection with Request No. 3. Accordingly, his request suffers from the same defect as Request No. 3: his comparators were the individuals in his skill group, not all the employees in Lefebvre's organization, and IBM has produced the documents regarding his skill group.

**Request No. 12**

Copies of all correspondence from any IBM manager of Human Resources employee pertaining to hiring outlook, hiring freezes, cost reductions, employee hiring and sourcing.

<u>Response</u>

IBM objects to this request on the grounds that it is vague, overbroad, unduly burdensome and seeks documents which contain confidential business information and documents which are neither relevant nor reasonably calculated to lead to the discovery

of admissible evidence. Subject to and without waiving these objections, and subject to the plaintiff agreeing to a suitable confidentiality stipulation, IBM will produce general correspondence from Human Resources or IBM managers in the 2001 time period regarding the need for the Microelectronics Division or IBM generally to limit hiring or cut costs and that it is able to locate after a reasonable search. IBM also points out that the documents produced in response to Request No. 8 reflect that over 1500 employees were targeted for layoff in the resource action affecting Rossiter.

Rossiter Letter of March 14, 2005

IBM has produced the OWBPA report only and has failed to produce the requested Human Resources documents which preceded the OWBPA.

Response

Your letter is incorrect. We produced e-mails concerning expense control efforts.

Issues Now in Dispute Regarding Request No. 12

Plaintiff seeks "documents pertaining to the hiring outlook and hiring freezes during 2001, which are relevant to Lefebvre's hiring of the much younger McNerney and Chang, assigning them Rossiter's job responsibilities, and then terminating Rossiter but retaining McNerney and Chang." Pl.'s Mem. at 25.

<div align="center">ARGUMENT</div>

IBM has complied with its discovery obligations. IBM has produced documents

that it was able to locate regarding hiring outlook and hiring freezes affecting Lefebvre's

organization. Tarlow Aff., ¶ 12. Plaintiff's motion is based on a false premise in that

IBM produced the documents he seeks.

**Request No. 13**

Copies of all communications, meeting notes, emails, memos from Mark Lefebvre to James Gianotti; Mark Lefebvre to Wendy Arnette; and Mark Lefebvre to any other IBM employee regarding continuing employment at IBM, specifically any communication relative to changing jobs before the layoffs were announced.

Response

IBM objects to this request on the grounds that it is vague, overbroad, unduly burdensome and seeks documents which are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. IBM also objects to producing documents

that would violate the privacy of another employee or would provide confidential information about another employee. IBM points out that James Gianotti and Wendy Arnette were not comparators to Rossiter in the layoff and their employment at IBM was unrelated to the decision to lay off Rossiter.

Rossiter Letter of March 14, 2005

IBM has failed to produce any documents responsive to the request and impermissibly and evasively seeks to redefine the scope of the request. The request addresses differential policies and practices at IBM, not narrowly-defined comparators to Plaintiff.

Response

We were unable to locate any responsive documents through a reasonable search.

Issues Now in Dispute Regarding Request No. 13

Rossiter says he is looking for information about "Lefebvre's efforts to protect selected younger employees from lay-off by changing their positions prior to, or at the time of the lay-off." Pl.'s Mem. at 18. He adds that "IBM has failed to produce *any* communications before the layoffs were announced, between Lefebvre and any IBM employee, including McNerney and Chang, about changing jobs, which is not credible given that both McNerney and Chang changed jobs near the time of the layoff." Pl.'s Mem. at 20.

### ARGUMENT

IBM has complied with its discovery obligations. As the above exchange demonstrates, IBM informed Rossiter that it had been unable to locate any responsive documents. Rossiter claims, without record support, that IBM *should* have such documents, because McNerney and Change "changed jobs near the time of the layoff." Pl.'s Mem. at 20. Contrary to plaintiff's assertions, McNerney joined Lefebvre's organization in January 2001, well before the layoff (which occurred a year later). See Pl.'s Statement of Facts in Dispute at ¶ 1.22. As for Chang, he worked in Lefebvre's organization from August 2001 and changed managers within the group when two of his direct supervisors departed in the fall of 2001. See Second Affidavit of Mark Lefebvre at

¶ 3, copy attached hereto as <u>Exhibit 7</u> (original attached to Defendant's Summary

Judgment Reply).

**Request No. 14**

Copies of all business plans, presentations, or meeting notes created by Mark
Lefebvre and/or Patricia McGloin pertaining to staffing proposals between January 2000
and January 2002.

<u>Response</u>

IBM objects to this request on the grounds that it is vague, overbroad, unduly
burdensome and seeks documents which contain confidential business information and
documents which are neither relevant nor reasonably calculated to lead to the discovery
of admissible evidence.  Subject to and without waiving these objections, IBM refers
Rossiter to the organizational charts produced in response to Request No. 10, which
reflect staffing.

<u>Rossiter Letter of March 14, 2005</u>

IBM's response to this request is not responsive.  Plaintiff seeks all documents
created by Mark Lefebvre and/or Patricia McGloin pertaining to staffing proposals
between January 2000 and January 2002.

<u>Response</u>

We were unable to locate any responsive documents through a reasonable search.

<u>Issues in Dispute Regarding Request No. 14</u>

"IBM's response to Request No. 14 that it could not locate any staffing proposals
that LeFebvre and/or McGloin made over a 2-year period is not credible, particularly
within the context of budgetary constraints and eventual downsizing."  Pl.'s Mem. at 20.

<div align="center">ARGUMENT</div>

IBM has complied with its discovery obligations.  IBM was unable to locate any

documents, as IBM informed Rossiter in response to his March 14 letter.  Rossiter does

not point to any documents that IBM has withheld, but merely asserts that he thinks that

McGloin or Lefebvre should have created staffing proposals.  Pl.'s Mem. at 20.   As in

the case of Request No. 3, plaintiff's argument is based on unsupported speculation and his motion should be denied. IBM cannot produce documents that do not exist.

**Request No. 15**

Any and all documents upon which IBM relies to support their contention that the following employees were the most qualified candidates for their respective positions including but not limited to their personnel files:

a) Karen J. Smith, Integrated Marketing Communications Strategist;
b) Ray Chang, Naming Programs;
c) Carol McNerney, Brand Marketing & Corporate Programs;
d) Marge Oppold, Events Marketing;
e) Edward Abrams, Director Integrated Marketing Communications; and
f) Patricia McGloin, Manager Integrated Marketing Communications.

Response

IBM objects to this request on the grounds that it is vague, overbroad, unduly burdensome and seeks documents which are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Moreover, the request assumes that IBM "contends" that the above-named individuals "were the most qualified candidates for their respective positions," which is a "contention" that assumes facts that have no bearing on this case. IBM points out that none of the above-named individuals were comparators to Rossiter in the layoff process and Rossiter did not compete with any of these individuals for positions at IBM. IBM also objects to producing documents that would violate the privacy of another employee or would provide confidential information concerning another employee.

Rossiter Letter of March 14, 2005

IBM's response to the request is not responsive. Plaintiff seeks the resumes of the six (6) individuals identified in the request.

Response

Without waiving the objections, see response to 7 above. We will also produce Ms. McGloin's and Ms. Smith's resumes to the extent they can be located through a reasonable search.

Issues in Dispute Regarding Request No. 15

Rossiter says that he seeks "all documents concerning Rossiter's skills, the skills and assessments of Rossiter's Division comparators, and/or IBM's 'skill rebalancing'." Pl.'s Mem. at 13.

26

<p style="text-align: center;">ARGUMENT</p>

IBM has complied with its discovery obligations.  In plaintiff's March 14 letter, he narrowed his request to the resumes of the named individuals.  In IBM's response to that letter, IBM agreed to produce resumes that it could find after reasonable search. Accordingly, there is no basis for plaintiff's motion.

## Request No. 17

Documentation of skill groups identified by Ms. Patricia McGloin which included an assessment of numerous employees and how the skills of those employees matched the skills needed by IBM.

### Response

IBM objects to this request on the grounds that it is vague, overbroad, unduly burdensome and seeks documents which are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.  IBM also objects to producing documents that would violate the privacy of another employee or would provide confidential information concerning another employee.  Subject to and without waiving these objections, IBM refers Rossiter to the documents produced in response to Request No. 9, subject to Rossiter entering into a suitable confidentiality stipulation.

### Rossiter Letter of March 14, 2005

IBM refers to its response to Request No. 9, for which the Defendant has only produced "IBM Marketing Professional Career Skills List By Job Level Integrated Marketing Communications Discipline," dated May 2001, which does not adequately address either Request No. 9 or Request No. 17.

### Response

We produced the selection work sheets for the skill group members to which Mr. Rossiter was compared.

### Issues in Dispute Regarding Request No. 17

Rossiter says that he seeks "all documents concerning Rossiter's skills, the skills and assessments of Rossiter's Division comparators, and/or IBM's 'skill rebalancing'." Pl.'s Mem. at 13.

<center>ARGUMENT</center>

IBM has complied with its discovery obligations. For the reasons discussed above in regard to Request No. 3, Rossiter's comparators were the other members of his skill group. IBM has produced those documents. To the extent that Rossiter seeks documents regarding other employees, such a request is not relevant and not reasonably calculated to lead to the discovery of admissible information.

<center>**CONCLUSION**</center>

Plaintiff's motion should both denied. He has brought this matter to the Court's attention without complying with Rule 56(f). He has otherwise flouted the Court's rules by submitting a nonconforming brief. Moreover, IBM has satisfied its discovery obligations. For these reasons and the reasons set forth more fully above, Plaintiff's motion should be denied. IBM should be awarded its fees for being forced to respond to this untimely and unwarranted motion.

Respectfully submitted,

**INTERNATIONAL BUSINESS MACHINES CORPORATION**

By its attorneys,


/s/ Daniel S. Tarlow
Daniel S. Tarlow, BBO #552920
Laurie F. Rubin, BBO #564947
Prince, Lobel, Glovsky & Tye LLP
585 Commercial Street
Boston, MA 02109
(617) 456-8000

Dated: September 7, 2005

<center>28</center>